IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON  DIVISION

| | | |
|---|---|---|
| STEPHEN FLYNN,<br>    *PLAINTIFF,* | §<br>§<br>§ | |
| VS. | §<br>§ | Civil Action No. 4:25-cv-4291 |
| | § | |
| AMGUARD INSURANCE COMPANY,<br>    *DEFENDANT,* | §<br>§<br>§ | |

**DEFENDANT AMGUARD INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT AND FOR SANCTIONS ARISING FROM
INSURANCE FRAUD**

TO THE HONORABLE PETER BRAY, U.S. MAGISTRATE JUDGE:

Defendant AmGUARD Insurance Company ("AmGUARD") moves for summary judgment on all claims asserted by Plaintiff Stephen Flynn ("Flynn") pursuant to Federal Rule of Civil Procedure 56, and moves for sanctions against Plaintiff's counsel pursuant to the Court's inherent authority, 28 U.S.C. § 1927, and Federal Rule of Civil Procedure 37(d), and respectfully shows the Court as follows.

## I.      Executive Summary

This is an insurance coverage dispute over claimed wind and hail damage from Hurricane Beryl to a Sugar Land home that has now been the subject of three insurance claims in five years, each seeking payment for damage to the same roof and the same interior rooms. To recover under his AmGUARD policy, Flynn must prove that his claimed loss occurred during the policy period and must give a jury some reasonable basis to segregate any Beryl damage from the damage he claimed in 2019 and never showed he repaired, the damage he claimed in 2021 and swore, through counsel, exceeded $189,000, and ordinary wear and deterioration on a roof his own adjusting file describes as brittle and long past its service life. He cannot. His sworn discovery answers profess no memory of his own claim history. His only damages evidence is a single unallocated $93,691.33

1

estimate attributing every item to Beryl. And he refused to appear for his properly noticed deposition. The Fifth Circuit does not send such a case to a jury, and neither should this Court.

The record also establishes something more. Plaintiff's counsel, Eric B. Dick and Dick Law Firm, PLLC ("DLF"), knew these facts better than anyone, because counsel created the record. In sworn filings in another case in this District, counsel attributed this same interior damage to a 2021 pipe burst, then, in the same month, commissioned the estimate attributing it to Hurricane Beryl. Counsel filed this suit fifty-two days after Judge Hanks dismissed the prior case with prejudice. AmGUARD therefore also moves for sanctions against counsel under the Court's inherent authority, 28 U.S.C. § 1927, and Federal Rule of Civil Procedure 37(d).

## II.      Summary of the Argument

Flynn cannot prove that a covered loss occurred during the policy period, and that failure is fatal to every claim he asserts. Asked in discovery to describe his 2019 claim on this Property, he answered that he "does not have sufficient information." Asked whether he received insurance proceeds for it, he was "without sufficient information to admit or deny." Asked for proof of repairs from that claim, he produced none. Asked to identify his damages, he pointed to a single unallocated $93,691.33 estimate to replace the entire roof and repair interior rooms throughout the home, prepared by R Martinez Consulting under a Dick Law Firm file number.

Those gaps are dispositive. Under Texas law, proof that the claimed loss occurred during the policy period is an essential element of Flynn's case on which he bears the burden. *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1200 (5th Cir. 1993). And where covered and noncovered events combine, Flynn must present evidence permitting a jury to segregate the covered damage. *Certain Underwriters at Lloyd's, London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 171–72 (5th Cir. 2018). The undisputed record identifies at least three sources of damage at

this Property apart from any Beryl damage: the April 2019 wind and hail loss, for which a full roof replacement and interior flooring, drywall, and baseboard repairs were estimated and for which no proof of repair exists; the February 2021 freeze loss, for which Flynn's own retained estimator swore to $189,893.16 in interior damage that the applicable policy paid only $1,500 to address; and the wear, deterioration, and lack of maintenance AmGUARD's field adjuster documented within a day of the storm. Flynn offers no competent evidence attributing any particular compensable damage to July 8, 2024, and none from which a jury could allocate among these causes. The contract claim therefore fails, and each extra-contractual claim fails with it. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018). Alternatively and independently, Flynn materially breached the Policy's cooperation and records conditions and refused to appear for deposition, prejudicing AmGUARD as a matter of law, and his mental anguish claim is supported by no evidence at all.

Finally, the same record supports sanctions against Plaintiff's counsel. Counsel litigated the 2021 freeze claim in this District, commissioned and filed a sworn $189,893.16 estimate of interior damage, represented to Judge Hanks as late as August 1, 2024, twenty-four days after Beryl, that the Property remained burdened with uncompensated damage from the 2021 loss, and simultaneously opened the Martinez engagement attributing the same damage to Beryl. Counsel then filed this suit weeks after that case was dismissed with prejudice, maintained it through sworn answers professing his client's total ignorance, and produced a client no-show at a noticed deposition. This conduct sits atop a judicially documented "pattern of abusive litigation tactics" catalogued by Judge Eskridge in *Shelby v. AmGuard Insurance Co.* AmGUARD requests its fees and expenses, referral of counsel to the State Bar of Texas and to this District's attorney admission and discipline process, and completion of legal ethics training.

3

### III.   Summary Judgment Evidence

AmGUARD does not bear the burden of proof on any element at issue and moves under Rule 56 principally on the absence of evidence supporting essential elements of Flynn's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). AmGUARD relies on the following materials, each of which may be cited under Rule 56(c)(1)(A).

Claim file and correspondence, authenticated by the Business Records Affidavit of AmGUARD's custodian served with this motion (Fed. R. Evid. 803(6), 902(11)):

Exhibit 1:     Policy STHO449756 (period March 25, 2024 to March 25, 2025)

Exhibit 9:     Claim Acknowledgement, July 8, 2024

Exhibit 10:    Homeowners Vendor Assignment, July 2024

Exhibit 11:    Pilot Catastrophe Services Closing Report and Estimate, July 10, 2024

Exhibit 12:    AmGUARD Reservation of Rights Letter, July 19, 2024

Exhibit 13:    Dick Law Firm Retainer Agreement, executed July 23, 2024

Exhibit 14:    Dick Law Firm Letter of Representation, July 26, 2024

Exhibit 15:    AmGUARD Response to Letter of Representation, August 20, 2024

Exhibit 16:    Dick Law Firm Email Demand, October 14, 2024

Exhibit 17:    R Martinez Consulting Estimate, October 3, 2024 (July 2024 inspection)

Exhibit 18:    Plaintiff's Demand Letter and Invocation of Appraisal, November 5, 2024

Exhibit 19:    Fair Deal Claims Report and Estimate, November 11, 2024

Exhibit 20:    AmGUARD Cease and Desist Letter, May 30, 2025

Prior claim records:

Exhibit 2:     April 2019 Alacrity Claim File (wind/hail claim)

Exhibit 3:     2021 Freeze Claim Appraisal Award, April 9, 2024, with panel estimate

Exhibit 4:     AEGIS Decision Letter, April 20, 2021

Certified court records from *Flynn v. AEGIS Security Insurance Co.*, No. 4:23-cv-2558 (S.D. Tex.), and *Shelby v. AmGuard Insurance Co.*, No. 4:24-cv-01128 (S.D. Tex.), obtained from PACER (Fed. R. Evid. 902(4), 201):

Exhibit 5:    Plaintiff's Response to AEGIS's Traditional Motion for Summary Judgment, Dkt. 13 (Oct. 27, 2023), with attachments Dkt. 13-1 (policy exhibit) and Dkt. 13-3 (Affidavit of Brandon Gadrow with Quantum Claim Consulting estimate)

Exhibit 6:    AEGIS's Traditional and No-Evidence Motion for Summary Judgment, Dkt. 19 (July 10, 2024), and Supplemental Brief regarding deemed admissions (July 26, 2024)

Exhibit 7:    Plaintiff's Response to AEGIS's Traditional and No-Evidence Motion for Summary Judgment, Dkt. 23 (Aug. 1, 2024)

Exhibit 8:    Memorandum Opinion and Order, Dkt. 26 (Jan. 14, 2025) (Hanks, J.)

Exhibit 26:   Order of Dismissal, Dkt. 39, *Shelby v. AmGuard Ins. Co.*, No. 4:24-cv-01128 (July 11, 2025) (Eskridge, J.)

Party discovery, declarations, and other records:

Exhibit 21:   Plaintiff's Responses to AmGUARD's First Set of Written Discovery

Exhibit 22:   Defendant's Notice of Oral and Video Deposition of Stephen Flynn, served June 9, 2026

Exhibit 23:   Certificate of Nonappearance of Stephen Flynn, June 30, 2026

Exhibit 24:   Declaration of Randall Taylor, P.E., with initial and supplemental reports

Exhibit 25:   Sanctions Order, *Hudson v. Standard Casualty Co.*, Cause No. 1199669 (Harris Cty. Ct. at Law No. 3) (certified copy)

Exhibit 27:   Affidavit of Jamie P. Cooper with itemized fee and expense records (Ex. 27-A & B)

AmGUARD also cites materials Flynn placed in the record of this case, including Plaintiff's Designation of Expert Witnesses and its Exhibit A (Dkt. 14, 14-1), the Notice of Removal and attached state court petition (Dkt. 1), and the operative scheduling orders (Dkt. 8, 11). Statements in Flynn's filings in the AEGIS action, made by the same counsel on behalf of the same party concerning the same Property, are admissible against Flynn as statements of a party opponent. Fed. R. Evid. 801(d)(2).

#### IV.     Statement of Undisputed Material Facts

**A.     The Policy.**

1. AmGUARD issued homeowners policy No. STHO449756 to Flynn for the residence at 1039 Evandale Lane, Sugar Land, Texas (the "Property"), with a policy period of March 25, 2024 to March 25, 2025. Ex. 1. The Policy covers direct physical loss occurring during the policy period; excludes loss caused by wear and tear, deterioration, and faulty or inadequate maintenance; limits loss settlement for wind and hail losses to roof surfacing by endorsement; and conditions coverage on the insured's duties after loss, including cooperating with AmGUARD's investigation, including providing records and documents as requested. Ex. 1. The Policy's Texas Special Provisions further void coverage, to the extent permitted by Texas Insurance Code sections 705.003 and 705.004, for an insured who intentionally conceals or misrepresents any material fact, engages in fraudulent conduct, or makes material false statements relating to the insurance. Ex. 1.

**B.     The April 2019 Wind/Hail Claim.**

2. Flynn's first claim arose from an April 13, 2019 wind and hail event, adjusted through North American Risk Services and Alacrity. Ex. 2; Ex. 24 (Taylor Decl.) ¶¶ 22, 29. The 2019 investigation documented interior water damage to the master bedroom walls and to flooring in the hall, hall closet, living room, den, dining room, and media room, roof and fence damage, and recommended a full roof replacement given the age and condition of the roof. Ex. 2 at 9.

3. The 2019 estimate provided for a full roof replacement; repair of water damaged flooring in the hall, hall closet, living room, den, dining room, and media room; drywall repair in the master bedroom; and 56 linear feet of fencing, for a replacement cost value of $26,643.12, net $10,871.42. Ex. 2 at 54–60; Ex. 24 ¶ 29.

4. No proof exists that any of the 2019 repairs were performed. Flynn has produced no

6

invoice, receipt, or work order reflecting repairs from the 2019 claim, and his sworn discovery answers state that he "does not have sufficient information" about the 2019 claim, its proceeds, or any repairs. Ex. 21, ROG Nos. 4, 9; RFP No. 21; RFA Nos. 6–7, 15.

**C.    The February 2021 Freeze Claim and the AEGIS Litigation.**

5. Flynn's second claim arose from a February 18, 2021 frozen pipe burst, insured by AEGIS Security Insurance Company. Ex. 3; Ex. 4. AEGIS initially declined payment because the $6,600 repair invoice Flynn submitted did not exceed his $7,950 deductible. Ex. 4.

6. DLF represented Flynn on the 2021 claim. In December 2022, DLF commissioned an estimate from Brandon Gadrow of Quantum Claim Consulting Services under file number DICKLAW-22560HOU. The Quantum estimate, dated December 21, 2022, claimed $189,893.16 in replacement cost damages from the pipe burst, including scopes for the kitchen, living room, laundry room, three bedrooms, multiple bathrooms, master bath, and the loft. Ex. 5 (Dkt. 13-3).

7. On June 28, 2023, DLF sued AEGIS on Flynn's behalf; the case was removed and assigned to Judge Hanks as *Flynn v. AEGIS Security Insurance Co.*, No. 4:23-cv-2558. Ex. 5; Ex. 8. On October 27, 2023, DLF filed Flynn's response to AEGIS's first summary judgment motion. Ex. 5 (Dkt. 13). The response cited, as "Exhibit A – Insurance Policy" that Flynn "purchased from Defendant," a policy that was neither an AEGIS policy nor in force at the time of the loss: it was AmGUARD policy No. STHO369086, with a policy period of March 25, 2022 to March 25, 2023, more than a year after the February 2021 loss. Ex. 5 (Dkt. 13 at 4 & Dkt. 13-1 at 1).

8. The same response attached Gadrow's sworn affidavit, in which Gadrow attested that "all of the damages identified in my report arose from a sudden and accidental discharge of water from pipes" and that he "did not include any damages that may have arisen from any perceived long-term leaks." Ex. 5 (Dkt. 13-3 ¶ 4).

9. The 2021 claim proceeded to appraisal. On April 9, 2024, the panel issued an award of $43,210.66 replacement cost value and $31,363.92 actual cash value for interior water damage to the stairs, family room, kitchen, laundry room, pantry, entry/foyer, and second-level vanity area. Ex. 3; Ex. 24 ¶ 16. Because the AEGIS policy capped the covered water loss at $1,500, AEGIS paid the $1,500 limit plus $271.48 in statutory interest. Ex. 21, ROG No. 5.

10. On July 10, 2024, AEGIS moved for summary judgment. Ex. 6.

11. On August 1, 2024, DLF filed Flynn's response. Ex. 7 (Dkt. 23). The response identified the defendant in its opening paragraph as "Nationwide Property and Casualty Insurance Company"; briefed the no-evidence summary judgment standard of Texas Rule of Civil Procedure 166a(i), a state procedural device that does not exist in federal court; and included an unfilled template placeholder reading, verbatim, "[Quote relevant policy language regarding ALE coverage]." Ex. 7 at 1, 4, 13. It represented that Flynn had "provided receipts and documentation" of additional living expenses, and that "[t]he estimate prepared by Plaintiff's estimator details damage that was not included in Defendant's estimate or payment," while citing no summary judgment evidence of any kind. Ex. 7 at 6, 13.

12. On January 14, 2025, Judge Hanks granted summary judgment for AEGIS and dismissed all of Flynn's claims with prejudice, observing that Flynn's response was "effectively no response," that it "cites to no summary judgment evidence," and that Flynn did not deny AEGIS's full payment. Ex. 8 at 3.



**Claim and Litigation History of the Property, 2019–2026**

2019

April 13, 2019
Wind/hail loss; interior water damage
and full roof replacement estimated,
$26,643.12 RCV (Ex. 2)

2020

February 18, 2021
Freeze loss (pipe burst) (Ex. 3)

April 20, 2021
AEGIS declines payment; repair
invoice below deductible (Ex. 4)

2021

December 21, 2022
DLF commissions Quantum estimate:
$189,893.16 for interior freeze damage
(Ex. 5, Dkt. 13-3)

June 28, 2023
DLF sues AEGIS (Ex. 5)

2022

October 27, 2023
DLF response filed with AmGUARD
policy as its policy exhibit and the
sworn Quantum estimate (Ex. 5)

2023

April 9, 2024
Appraisal award:
$43,210.66 RCV (Ex. 3)

April 23, 2024
AEGIS pays $1,500 policy limit
plus $271.48 interest (Ex. 21)

2024

July 8 – August 1, 2024
(see detail timeline)

January 14, 2025
AEGIS case dismissed
with prejudice (Ex. 8)

2025

March 7, 2025
DLF files this suit,
52 days later (Dkt. 1)

May 30, 2025
Cease and desist; proof of prior
repairs still not produced (Ex. 20)

2026

June 30, 2026
Flynn fails to appear for noticed
deposition (Exs. 22, 23)

9

**D.      The July 2024 Beryl Claim.**

13. Hurricane Beryl struck the Houston area on July 8, 2024. Flynn reported a claim the same day, describing wind damage to the roof, water coming through the windows, downed fencing, and a downed tree. Ex. 9; Ex. 10. AmGUARD acknowledged the claim that day and assigned Pilot Catastrophe Services, which inspected on July 9, 2024, with Flynn and his contractor present. Ex. 9; Ex. 11.

14. Pilot documented wind damage but also a lack of maintenance at the rear elevation and master bedroom windows, where wind-driven rain seeped through cracked caulk, and noted that some damage "appear[ed] to be ongoing and not from the recent storm." Ex. 11 at 1–2. Pilot estimated the roof at eighteen or more years old, brittle, and non-repairable, although the Policy listed it as eleven years old; Flynn later claimed a 2017 replacement but has no documentation for it. Ex. 11 at 2; Ex. 21, ROG No. 10, RFP No. 20, RFA No. 4. Pilot's estimate allowed a full roof replacement, interior repairs, and fence repairs, for a gross loss of $63,379.73 and a net claim of $46,721.48 after depreciation and the deductible, applying the Policy's limited loss settlement endorsement for roof surfacing. Ex. 11.

15. Based on the overlap between the reported Beryl damage and the 2019 and 2021 claims, AmGUARD issued a reservation of rights on July 19, 2024, requesting proof of repairs from both prior claims at the outset of its investigation. Ex. 12. Flynn admits AmGUARD made that request. Ex. 21, RFA No. 20. To date, no proof of repairs from the 2019 claim has ever been produced. Ex. 21, RFA Nos. 15, 21, 25; Ex. 20.

16. On July 23, 2024, Flynn executed DLF's contingency retainer. Ex. 13. On July 26, 2024, the same day AEGIS filed its deemed-admissions supplement in the prior case DLF was defending for Flynn, DLF sent AmGUARD a letter of representation demanding a reinspection

and promising that "[i]n the upcoming days, we will furnish an estimate showing the correct evaluation of this loss." Ex. 14; Ex. 6. R Martinez Consulting's file for the Property, bearing Dick Law file number DL078924, was opened that same day, July 26, 2024. Ex. 17 at 1.

17. On August 20, 2024, AmGUARD's counsel responded to the letter of representation, advising that Flynn had personally contacted AmGUARD and stated that he had not authorized DLF to represent him, and requesting proof of representation. Ex. 15. DLF then produced the retainer. Ex. 13; Ex. 21, RFA No. 23.

18. The Martinez estimate issued on October 3, 2024, based on a July 2024 inspection and a September 2024 price list. Ex. 17 at 1, 10. It totals $93,691.33 and includes a full roof replacement plus interior scopes for the master bedroom, hallway, living room, kitchen, game room, dining room, and entry, and exterior and fencing items. Ex. 17 at 10, 12. It attributes every line item to "hail and wind damage" from Beryl, allocates nothing to any prior loss or to wear, and discloses no methodology for distinguishing Beryl damage from the 2019 scope, the 2021 scope, or deterioration. Ex. 17; Dkt. 14-1.

19. On October 14, 2024, DLF sent a demand for the full $93,691.33. Ex. 16. On November 5, 2024, DLF served a demand for $93,691.33 plus $10,000 in attorney's fees. Ex. 18. AmGUARD retained Fair Deal Claims, which reinspected in November 2024 and estimated $88,498.95 in replacement cost, again including rooms overlapping prior claims. Ex. 19; Ex. 24 ¶¶ 17–18.

20. On May 30, 2025, AmGUARD's counsel sent DLF a cease-and-desist letter documenting DLF's repeated direct contacts with represented party AmGUARD on November 11, 2024, December 27, 2024, May 1, 2025, and May 4, 2025; reiterating the still-unanswered requests for proof of prior repairs; and cautioning that continued noncompliance could breach the Policy's cooperation clause. Ex. 20; Ex. 21, RFA No. 22.

11

**E.      This Lawsuit and Flynn's Discovery Answers.**

21. DLF filed this suit in Texas state court on March 7, 2025, fifty-two days after Judge Hanks dismissed the AEGIS case with prejudice. Dkt. 1; Ex. 8. AmGUARD removed on diversity, the parties consented to proceed before this Court under 28 U.S.C. § 636(c), discovery closed June 26, 2026, and docket call is set for November 20, 2026. Dkt. 1, 8, 9, 11.

22. Flynn's sworn discovery responses profess near-total ignorance of his own claim history. As to the 2019 claim: he "does not have sufficient information" to describe the damage or repairs, is "without sufficient information" to admit whether he received proceeds, and is "without sufficient information" to admit that he never provided proof of repairs, attributing the gaps to "serious ongoing health circumstances, including multiple strokes." Ex. 21, ROG Nos. 4, 9; RFA Nos. 6–7, 15, 25. As to the condition of the Property the day before Beryl, he swears he "is not aware of any unrepaired roof damage" or "pre-existing water damage," and he denies that the damages he now claims include the same areas as the 2021 claim, notwithstanding his own counsel's sworn filings to the contrary. Ex. 21, ROG Nos. 12–13; RFA Nos. 16–17, 24.

23. Asked to identify his damages, Flynn identifies only the Martinez estimate. Ex. 21, ROG Nos. 14–16. Asked to identify loss of use expenses, he answers "None." Ex. 21, ROG No. 20. His expert designation discloses Martinez as his sole causation witness, resting on the estimate itself, and discloses no allocation methodology of any kind. Dkt. 14, 14-1.

**F.      The Deposition Nonappearance.**

24. On June 9, 2026, AmGUARD served notice of Flynn's deposition, to be taken by Zoom on June 30, 2026 at 10:00 a.m. Ex. 22. On June 30, 2026, the deposition was convened as noticed. By 10:15 a.m., DLF's attorney advised that Flynn would not appear, and a certificate of nonappearance issued. Ex. 23. No motion for protection or objection to the notice was presented.

**G.     The Engineering Evidence.**

25. AmGUARD retained Randall Taylor, P.E., who inspected the Property, reviewed the claim files, estimates, photographs, and the subpoenaed 2019 records, and issued initial and supplemental reports. Ex. 24. Taylor determined that there is overlap between the 2019 repair scope and the Martinez estimate, including the complete roof replacement and repairs to the master bedroom, hallway, and living room, and that the damage claimed in 2019 to the composition-shingle roof, wood flooring, baseboards, and baseboard painting was never repaired and is being claimed again in the Beryl claim. Ex. 24 ¶¶ 29–31, 35.

26. Taylor also determined that the 2021 appraisal scope and the Beryl-claim scopes share three rooms, the living room/family room, entry/foyer, and kitchen; the 2021 panel estimate ultimately included the kitchen in scope; and Flynn has produced no repair invoices for the kitchen from the freeze claim, making it impossible to attribute the overlapping kitchen damage to a single cause. Ex. 24 ¶¶ 19–21.

## V.     Summary Judgment Standard and Choice of Law

Summary judgment is proper when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 322. Where, as here, the nonmovant bears the burden of proof at trial, the movant may satisfy Rule 56 by pointing to the absence of evidence supporting an essential element of the nonmovant's case; the nonmovant must then come forward with specific evidence, and conclusory allegations, unsubstantiated assertions, and a mere scintilla will not do. *Celotex*, 477 U.S. at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Because this is a diversity action, Texas substantive law governs. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010).

## VI.    Argument

**A.    Flynn cannot prove a covered loss during the policy period and cannot segregate covered from noncovered damage.**

The Fifth Circuit has grown only clearer that an insured who arrives with a repair estimate on an aged, multi-loss property, and nothing more on causation, does not reach a jury. *Cutchall v. Chubb Lloyds Ins. Co. of Tex.*, No. 25-20024, 2026 WL 625633 (5th Cir. Mar. 5, 2026) (per curiam); *H5R, L.L.C. v. Scottsdale Ins. Co.*, No. 25-10533, 2026 WL 252653 (5th Cir. Jan. 30, 2026) (per curiam); *Smiley Team II, Inc. v. Gen. Star Ins. Co.*, No. 23-40129, 2024 U.S. App. LEXIS 13192 (5th Cir. 2024) (per curiam); *Frymire Home Servs., Inc. v. Ohio Sec. Ins. Co.*, 12 F.4th 467 (5th Cir. 2021); *Lowen Valley*, 892 F.3d at 171–72; *Hamilton Props. v. Am. Ins. Co.*, 643 F. App'x 437, 442 (5th Cir. 2016). This is that case.

"Proof that the claimed losses occurred during the policy period is an essential element of [the insured's] coverage claim on which it bears the burden of proof." *Martech*, 993 F.2d at 1200; *Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 219 (5th Cir. 2015). And where covered and noncovered perils combine, Texas's doctrine of concurrent causes limits recovery to the portion caused solely by the covered peril and places on the insured the burden of presenting evidence from which a jury can allocate. *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993); *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971); *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 302–04 (Tex. App.—San Antonio 1999, pet. denied); *All Saints Catholic Church v. United Nat'l Ins. Co.*, 257 S.W.3d 800, 802 (Tex. App.—Dallas 2008, no pet.). Failure to provide allocation evidence "is fatal to an insured party's claim." *Nat'l Union Fire Ins. v. Puget Plastics Corp.*, 735 F. Supp. 2d 650, 659 (S.D. Tex. 2010).

The undisputed record establishes damage from multiple sources, most of it predating the Policy. The 2019 file documents a roof at the end of its life and interior water damage in the master

14

bedroom, hallway, living room, den, dining room, and media room, with a full roof replacement estimated and no proof any repair was ever made. Ex. 2; Ex. 21, RFA Nos. 15, 25; Ex. 24 ¶¶ 29–31, 35. The 2021 freeze claim produced a sworn $189,893.16 estimate of interior damage, commissioned by DLF (Flynn's counsel), covering the kitchen, living room, and beyond, and an appraisal award for seven interior areas of which the applicable policy paid only $1,500, leaving that loss overwhelmingly uncompensated and, on this record, unrepaired: Flynn's counsel represented to Judge Hanks on August 1, 2024, after Beryl, that "[t]he estimate prepared by Plaintiff's estimator details damage that was not included in Defendant's estimate or payment." Ex. 5 (Dkt. 13-3); Ex. 7 at 6; Ex. 3; Ex. 21, ROG No. 5. Those statements, made by Flynn's authorized counsel in judicial filings concerning this same Property, are party-opponent admissions here. Fed. R. Evid. 801(d)(2). And within a day of the storm, AmGUARD's adjuster documented wear, cracked caulk, deferred maintenance, and damage that "appear[ed] to be ongoing and not from the recent storm." Ex. 11 at 1–2.

Against that record, Flynn's proof permits no attribution and no allocation. He professes ignorance on every relevant point: he cannot describe his 2019 claim, cannot say whether he was paid for it, has no repair documentation, and swears he is unaware of any pre-existing roof or interior damage despite his counsel's sworn filings cataloguing exactly that. Ex. 21, ROG Nos. 4, 9, 12–13; RFA Nos. 6–7, 15–17, 24–25. His damages evidence is a single replace-everything estimate that assigns no damage to any date, storm, or peril. Ex. 17. In *Lowen Valley*, the Fifth Circuit held that materially identical evidence "does not afford the jury a reasonable basis on which to allocate" and affirmed summary judgment. 892 F.3d at 171–72. The same result followed in *Cutchall*, where inconsistent loss theories contradicted by the insurer's evidence failed to raise a genuine issue that a covered storm caused the loss during the policy period, and in *H5R*, where

15

roof damage predating the loss date defeated the claim.

**Table 1. Areas Claimed Across the Three Claims on the Property**

| Area of the Property | April 2019 Wind/Hail Claim Carrier estimate **$26,643.12 RCV** (Ex. 2) (e) | Feb. 2021 Freeze Claim Quantum estimate (DLF-commissioned) **$189,893.16 RCV** (Ex. 5, Dkt. 13-3) (d) | Feb. 2021 Freeze Claim Appraisal panel award **$43,210.66 RCV** (Ex. 3) | July 2024 Beryl Claim Martinez estimate **$93,691.33 RCV** (Ex. 17) |
|---|---|---|---|---|
| **Roof (complete replacement)** | ✓ Full replacement (Ex. 2 at 54–60; Ex. 24 ¶ 29) | — (c) | — (c) | ✓ Full replacement, $37,376.42 (Ex. 17 at 12) |
| **Master Bedroom** | ✓ Drywall, baseboards, paint (Ex. 24 ¶ 29) | — | — | ✓ $5,194.97 (Ex. 17 at 12) |
| **Hallway** | ✓ Wood flooring, baseboards (Ex. 24 ¶ 29) | — | — | ✓ $803.73 (Ex. 17 at 12) |
| **Living Room / Family Room (a)** | ✓ Wood flooring, baseboards (Ex. 24 ¶ 29) | ✓ In scope (Ex. 5, Dkt. 13-3) | ✓ Floor protection only (b) (Ex. 24 ¶ 20) | ✓ $5,052.51 (Ex. 17 at 12) |
| **Kitchen** | — | ✓ In scope (Ex. 5, Dkt. 13-3) | ✓ Drywall, paint, trim (Ex. 24 ¶ 21) | ✓ $2,910.04 (Ex. 17 at 12) |
| **Entry / Foyer (a)** | ✓ Wood flooring, baseboards (Ex. 24 ¶ 29) | — | ✓ Floor protection only (b) (Ex. 24 ¶ 20) | ✓ $1,736.81 (Ex. 17 at 12) |
| **Dining Room** | ✓ Wood flooring, baseboards (Ex. 24 ¶ 29) | — | — | ✓ $2,389.09 (Ex. 17 at 12) |
| **Den / Media Room / Game Room (a)** | ✓ Wood flooring (den and media room) (Ex. 24 ¶ 29) | — | — | ✓ Game Room, $2,120.50 (Ex. 17 at 12) |
| **Windows (beading / glazing bead)** | ✓ Window beading replacement (Ex. 24 ¶ 29) | — | — | ✓ Glazing bead (Ex. 17; Ex. 21, ROG No. 14) |
| **Fencing** | ✓ 56 linear feet (Ex. 24 ¶ 29) | — | — | ✓ $5,188.68 (Ex. 17 at 13) |

Notes and comments to table:

16

(a)     Room designations are conformed where the source documents use differing labels; each cell reflects the source document's own scope and label. See Ex. 24 ¶¶ 19, 30–31.

(b)     The 2021 appraisal panel estimate contains no repair-cost line items in the Living Room/Family Room or Entry/Foyer beyond floor protection. Ex. 24 ¶ 20.

(c)     The 2021 claim arose exclusively from interior water and freeze damage and involved no claim for the roof. Ex. 21, RFA No. 14 (response).

(d)     The Quantum estimate is organized by phase (packout, demolition, buildback, painting) rather than by trade within each room; rooms are as listed in its scope pages. Ex. 5, Dkt. 13-3.

(e)     No invoice, receipt, or work order evidencing repair of any 2019 item has been produced. Ex. 21, RFA Nos. 15, 25.

As shown in Table 1, the Martinez estimate cannot fill the gap. An expert presentation that describes observed damage and attributes it to a storm within the policy period, without any methodology for excluding other causes, is "the epitome of an unsubstantiated assertion" and is not competent summary judgment evidence. *Stagliano*, 633 F. App'x at 220; *Smiley Team II*, 2024 U.S. App. LEXIS 13192, at *2. That describes the Martinez estimate precisely. Martinez inspected in July 2024 and priced the loss in October 2024, attributing every item, including the same roof replacement estimated in 2019 and the same living room, kitchen, and entry addressed in the 2021 award, to Beryl. Ex. 17. He identifies no physical marker, dating technique, or method distinguishing Beryl damage from the 2019 scope, the 2021 scope, or deterioration; he never mentions the prior claims at all. Ex. 17; Dkt. 14, 14-1. Nor does *Advanced Indicator & Manufacturing, Inc. v. Acadia Insurance Co.*, 50 F.4th 469 (5th Cir. 2022), rescue Flynn: there the expert affirmatively ruled out other causes through reasoned analysis. Martinez rules out nothing. Because Flynn has no competent evidence that any particular compensable damage occurred during the policy period, and none from which a jury could segregate covered from noncovered damage, the breach of contract claim fails as a matter of law.

**B.      The extra-contractual claims fail with the contract claim and, independently, under the bona fide dispute rule.**

Flynn's claims under Chapters 541 and 542 of the Texas Insurance Code, the DTPA, and

17

the common-law duty of good faith all seek policy benefits as damages. Under *Menchaca*, an insured cannot recover for a statutory violation if he had no right to benefits under the policy and sustained no injury independent of the right to benefits. 545 S.W.3d at 489, 499–500. Flynn has neither pleaded nor produced evidence of any independent injury, a showing the Texas Supreme Court has described as one it has "yet to encounter." *Id.* at 500. Because Flynn cannot establish a covered, in-period, segregated loss, every extra-contractual claim fails with the contract claim. *Lowen Valley*, 892 F.3d at 172.

Independently, this record establishes a bona fide coverage dispute, which cannot support bad faith. An insurer does not act in bad faith by disputing a claim where a reasonable basis supports its position. *U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997); *Provident Am. Ins. Co. v. Castañeda*, 988 S.W.2d 189, 193 (Tex. 1998); *Higginbotham v. State Farm Lloyds*, 103 F.3d 456, 460 (5th Cir. 1997). AmGUARD acknowledged the claim the day it was reported, inspected within twenty-four hours, requested proof of prior repairs within eleven days, granted the requested reinspection, and retained a licensed professional engineer for further analysis. Ex. 9, 11, 12, 19, 24. Flynn's disagreement, backed by an unallocated estimate, is the definition of a bona fide dispute. His DTPA theories fail for the further reason that he identifies no false, misleading, or deceptive act: a coverage disagreement is not a misrepresentation, and "[a] mere breach of contract is not a false, misleading or deceptive act." *McManus v. State Farm*, 2004 WL 2533558, at *5 (N.D. Tex. Nov. 8, 2004); *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 445–46 (Tex. 2012). Nor is there any evidence AmGUARD took advantage of Flynn "to a grossly unfair degree" as required for unconscionability. *United Servs. Auto. Ass'n v. Croft*, 175 S.W.3d 457, 472 (Tex. App.—Dallas 2005, no pet.); *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001).

C.    **Alternative grounds.**

18

### 1. Flynn materially breached the Policy's conditions precedent, prejudicing AmGUARD.

The Policy conditions coverage on Flynn's cooperation, his production of records and documents as requested. Ex. 1. An insured's failure to satisfy such conditions forfeits coverage where the failure is material and prejudicial, and a breach is material where it deprives the insurer of the substantial benefit of the condition. *Allstate Ins. Co. v. Love*, No. 4:20-CV-00022, 2022 WL 5430123, at *3 (S.D. Tex. June 14, 2022); *Martinez v. ACC Ins. Co.*, 343 S.W.3d 924, 930 (Tex. App.—Dallas 2011, no pet.); *Coastal Ref. & Mktg., Inc. v. U.S. Fid. & Guar. Co.*, 218 S.W.3d 279, 285–86 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692–93 (Tex. 1994). AmGUARD requested proof of prior repairs at the outset and repeatedly thereafter; none was ever produced. Ex. 12, 20; Ex. 21, RFA Nos. 15, 21, 25. Flynn then refused to appear for his deposition, with counsel announcing the nonappearance fifteen minutes after the scheduled start. Ex. 22, 23. The prejudice is the failure described above: the withheld repair information and refused examination are precisely what would permit AmGUARD, and a jury, to distinguish Beryl damage from prior unrepaired losses. That deprivation of the condition's benefit is material and prejudicial as a matter of law. *Clarendon Nat'l Ins. Co. v. FFE Transp. Servs., Inc.*, 176 F. App'x 559, 562 (5th Cir. 2006).

### 2. There is no evidence of compensable mental anguish.

To survive summary judgment, Flynn must offer direct evidence of the nature, duration, and severity of mental anguish establishing a substantial disruption of his daily routine, beyond mere worry, anxiety, vexation, or anger. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995); *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996). Flynn has produced nothing: no documents, no testimony (he refused to give any), and sworn answers identifying no out-of-pocket loss of use expenses at all. Ex. 21, ROG No. 20; Ex. 23. No reasonable

19

jury could find compensable mental anguish on this record.

### VII.   Motion for Sanctions Against Plaintiff's Counsel

### A.   The Court's authority.

Three independent sources of authority support the relief AmGUARD requests, each directed at counsel rather than the client.[1]

First, the Court's inherent power. A federal court may sanction a party or attorney who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," including by shifting the opposing party's attorney's fees. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). When "the entire course of conduct throughout the lawsuit evidence[s] bad faith and an attempt to perpetrate a fraud on the court," the court may shift all the fees incurred, *id.* at 50–51; otherwise the award must be limited to fees the innocent party would not have incurred but for the bad faith conduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 103–04, 108 (2017). In this Circuit, sanctions against an attorney under the inherent power require clear and convincing evidence of bad faith. *Crowe v. Smith*, 151 F.3d 217, 236 (5th Cir. 1998). The inherent power also supports non-monetary measures, including disciplinary referral and remedial education.

Second, 28 U.S.C. § 1927, makes an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" personally liable for the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct, upon evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court. *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002); *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998).

Third, Rule 37(d). When a party fails to appear for his properly noticed deposition, the

---

[1] AmGUARD preserves, and does not waive, its contention that Flynn's claims are groundless and brought in bad faith or for harassment within the meaning of Tex. Ins. Code § 541.153 and Tex. Bus. & Com. Code § 17.50(c). The relief requested in this motion, however, is directed at counsel.

Court may impose sanctions and "must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(1)(A)(i), (d)(3).

**B.      The record establishes counsel's bad faith by clear and convincing evidence.**

This is lawyer-driven litigation, and the proof is counsel's signature, in two courthouses, attributing the same damage to different causes.

Counsel's knowledge predates this claim by years. DLF represented Flynn on the 2021 freeze claim, commissioned the December 2022 Quantum estimate swearing to $189,893.16 in interior damage to this Property, and filed that sworn estimate in federal court in October 2023, alongside a "policy" exhibit that was in fact an AmGUARD policy (the wrong carrier and the wrong year). Ex. 5. Counsel therefore knew, from documents counsel created and filed, that this Property carried extensive claimed and largely uncompensated interior damage predating Hurricane Beryl, in the very rooms at issue here.

Then came August 1, 2024. Twenty-four days after Beryl, and six days after opening the Martinez file that would attribute this interior to the hurricane, Eric Dick signed and filed a brief representing to Judge Hanks that "[t]he estimate prepared by Plaintiff's estimator details damage that was not included in Defendant's estimate or payment," that is, that the Property remained burdened with uncompensated damage from the 2021 pipe burst. Ex. 7 at 6; Ex. 17 at 1. The same lawyer, the same Property, the same rooms, the same month: one cause of loss for Judge Hanks, another for AmGUARD.

21



**July 8 to August 1, 2024: The Same Nineteen Days in Two Courts**

**The Beryl Claim (AmGUARD)**

**The AEGIS Litigation (Flynn v. AEGIS, No. 4:23-cv-2558)**

July 8
Hurricane Beryl; claim reported same day (Exs. 9, 10)

July 9–10
Pilot inspects; notes ongoing damage and lack of maintenance (Ex. 11)

July 19
AEGIS RFA responses come due; none served; requests deemed admitted (Ex. 6)

July 19
Reservation of rights requests proof of repairs from the 2019 and 2021 claims (Ex. 12)

July 26
AEGIS files supplemental brief on the deemed admissions (Ex. 6)

July 23
Flynn executes DLF retainer (Ex. 13)

August 1
DLF response to Judge Hanks: 2021 damage "not included in Defendant's estimate or payment"; no evidence cited (Ex. 7)

July 26
DLF letter of representation promises estimate with the "correct evaluation"; Martinez file DL078924 opened (Exs. 14, 17)

Counsel then filed this suit on March 7, 2025, fifty-two days after Judge Hanks dismissed the AEGIS case with prejudice, and maintained it on sworn answers professing that the client remembers nothing about the claim history counsel litigated, while denying pre-existing damage that counsel's own filings establish. Ex. 8; Ex. 21. Counsel let deemed admissions destroy the

AEGIS case through simple non-response, Ex. 6, and finished here by producing a client no-show at a Zoom deposition requiring no travel at all, announced by DLF attorney Joe Radler fifteen minutes after the scheduled start, with no motion for protection ever filed. Ex. 22, 23. The client could never carry his allocation burden, and no one knew that better than the lawyer who had already sworn the damage belonged to a different storm. Filing and maintaining this action on that knowledge was bad faith; each stage of its maintenance unreasonably and vexatiously multiplied these proceedings.

**Table 2. Amounts Claimed, Awarded, and Paid**

| Claim | Amount Claimed | Amount Awarded or Adjusted | Amount Paid |
|---|---|---|---|
| **April 2019 Wind/Hail** | Carrier estimate: **$26,643.12 RCV** (Ex. 2 at 60) | Net after deductible and depreciation: **$10,871.42** (Ex. 2 at 60) | Flynn professes no memory whether proceeds were received; no proof of any repair produced (Ex. 21, RFA Nos. 7, 15) |
| **February 2021 Freeze** | Quantum estimate (DLF-commissioned): **$189,893.16** (Ex. 5, Dkt. 13-3) | Appraisal award: **$43,210.66 RCV / $31,363.92 ACV** (Ex. 3) | **$1,771.48** ($1,500.00 policy limit plus $271.48 statutory interest) (Ex. 21, ROG No. 5) |
| **July 2024 Beryl** | Martinez estimate and demand: **$93,691.33** (Exs. 16–18) | This suit (Dkt. 1) | None |

## C.     This conduct extends a judicially documented pattern.

This Court would not be the first to say so. In *Shelby v. AmGuard Insurance Co.*, Judge Eskridge dismissed another DLF case with prejudice for violation of court orders and want of prosecution, found that "[a] pattern of abusive litigation tactics by Eric Dick and his law firm is now quite apparent," described counsel's "lazy and unprofessional approach to the many cases with which he burdens the courts," and catalogued sanctions and disciplinary orders against Mr. Dick and DLF across state and federal courts, including *Burns v. Standard Casualty Co.*, *Aleman v. Standard Casualty Co.*, *Etienne v. State Farm Lloyds*, and *Nguyen v. Aventus Insurance Co.*, as well as orders concerning DLF's recurring appraiser, Mr. Gadrow, the same estimator whose

sworn affidavit anchors the 2021 filings here. Ex. 26 at 4; Ex. 5 (Dkt. 13-3). In *Hudson v. Standard Casualty Co.*, a Harris County court sanctioned DLF where the insured herself testified that she disagreed with the inflated repair figure DLF advanced and with the factual allegations pleaded in her name. Ex. 25. And in *Shelby*, Judge Eskridge expressly advised the parties that he had "under advisement whether to separately refer Eric B. Dick and the Dick Law Firm, PLLC, to the State Bar of Texas for disciplinary proceedings and/or for consideration by the Southern District of Texas for revocation of admittance to practice before the federal courts of the Southern District." Ex. 26 at 5. The record developed in this case answers the question Judge Eskridge framed.

**D.    Relief requested.**

*Referral and remedial measures.* AmGUARD requests that the Court (1) refer Eric B. Dick and Dick Law Firm, PLLC to the State Bar of Texas for disciplinary investigation; (2) refer Mr. Dick to the Southern District of Texas for consideration of attorney admission and discipline procedures, as Judge Eskridge contemplated in *Shelby*; (3) order Mr. Dick to complete legal ethics training in a number of hours the Court deems appropriate and to certify completion to the Court; and (4) grant such other relief as the Court finds appropriate to deter repetition of this conduct.

*Fees and expenses.* As detailed in the Affidavit of Jamie P. Cooper and the itemized records and invoices attached to it, AmGUARD has incurred $48,495.00 in reasonable and necessary attorney's fees (240.6 hours at a blended rate of approximately $201 per hour), $2,617.78 in litigation expenses, including the records subpoenas made necessary by Plaintiff's failure to produce any prior-claim or repair documentation, and $11,733.35 in consulting and expert charges, a total of $62,846.13 from August 1, 2024 through the dates reflected in the attached records, with additional fees accruing through the preparation of this motion that AmGUARD will supplement. Ex. 27. Because counsel manufactured and maintained the entirety of this litigation in bad faith,

24

every dollar satisfies *Goodyear's* but-for standard, and the Court may shift the full amount under its inherent power. *Chambers*, 501 U.S. at 50–51; *Goodyear*, 581 U.S. at 108. In the alternative, the Court should award the $60,015.63 incurred from the filing of this action, comprising $45,664.50 in fees together with all of the expenses and expert charges, each of which postdates filing, under the inherent power and § 1927, which by its terms reaches "excess costs, expenses, and attorneys' fees" alike. At minimum, Rule 37(d) requires an award of the expenses caused by the deposition nonappearance, no less than $4,707.00 in itemized preparation and attendance time, plus court reporter and videographer charges to be supplemented, against Flynn, the attorneys advising him, or both; no substantial justification exists for a client no-show, announced by counsel, at a deposition noticed twenty-one days in advance without objection.

### VIII.   Conclusion and Prayer

Three claims, five years, one house, and overlapping damage. Texas law placed on Flynn the burden of proving a covered, in-period, segregated loss, and two years of investigation and litigation have produced sworn answers that he remembers nothing, an unallocated estimate attributing everything to the most recent storm, and a refusal to testify. The lawyer who built that record has already sworn, in another courtroom, that the damage belonged to a different cause.

AmGUARD Insurance Company therefore respectfully requests that the Court grant this motion; enter judgment that Flynn take nothing on all claims; award AmGUARD its reasonable attorney's fees and expenses against Eric B. Dick and Dick Law Firm, PLLC under the Court's inherent authority, 28 U.S.C. § 1927, Rule 37(d); refer Eric B. Dick and Dick Law Firm, PLLC to the State Bar of Texas and to this District's attorney admission and discipline process; order completion of legal ethics training; award AmGUARD its costs of court; and grant all other relief, at law or in equity, to which AmGUARD is justly entitled.

Respectfully submitted,

By:*/s/ Jamie P. Cooper*
    **Christopher W. Martin**
    TX Bar No. 13057620
    SDTX Bar No. 13057620
    E-mail:  martin@mdjwlaw.com
    808 Travis, Suite 1100
    Houston, Texas 77002
    Telephone: (713) 632-1700
    Facsimile: (713) 222-0101
**ATTORNEYS FOR DEFENDANT,
AMGUARD INSURANCE COMPANY**

**Of Counsel:**
Jamie P. Cooper
TX Bar No. 24027603
SDTX Bar No. 34510
E-Mail: Cooper@mdjwlaw.com
11467 Huebner Road, Suite 175
San Antonio, Texas 78230
Telephone: (210) 298-2480

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(D), counsel for Defendant conferred with counsel for Plaintiff regarding the relief requested in the sanctions portion of this motion on July 31, 2026, and Plaintiff is opposed. No conference is required on the motion for summary judgment.

*/s/ Jamie P. Cooper*
Jamie P. Cooper

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure, by CM/ECF filing on this the July 31, 2026:

Eric B. Dick                      *Via E-service:*   eric@dicklawfirm.com
DICK LAW FIRM, PLLC
3701 Brookwoods Drive
Houston, Texas 77092
ATTORNEYS FOR PLAINTIFF

*/s/ Jamie P. Cooper*
Jamie P. Cooper

26