**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **STEPHEN FLYNN,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | **Civil Action No. 4:25-cv-4291** |
| | § | |
| **AMGUARD INSURANCE COMPANY,** | § | |
| *Defendant.* | § | |

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND FOR SANCTIONS

# TABLE OF CONTENTS

**Page**

**I. INTRODUCTION** .......... **1**
**II. PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE** .......... **2**
**III. RESPONSE TO AMGUARD'S "STATEMENT OF UNDISPUTED MATERIAL FACTS"** .......... **3**
**IV. PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT** .......... **4**
**V. THE GOVERNING STANDARD** .......... **4**
**VI. AMGUARD SEGREGATED THIS LOSS TWICE, IN WRITING, BEFORE SUIT** .......... **5**
**VII. "FULL REPLACEMENT" IS A LABEL; THE LINE ITEMS ARE THE SCOPE** .......... **7**
**VIII. WHAT INSURANCE ACTUALLY PAID ACROSS THREE CLAIMS** .......... **8**
**IX. AMGUARD'S CAUSATION AND SEGREGATION AUTHORITIES DO NOT SUPPORT THE MOTION** .......... **9**
**X. FILING THREE CLAIMS IN FIVE YEARS IS NOT FRAUD** .......... **11**
**XI. THE EXTRA-CONTRACTUAL CLAIMS SURVIVE — DERIVATIVELY AND INDEPENDENTLY** .......... **12**
**XII. THE CONDITIONS-PRECEDENT GROUND FAILS FOR WANT OF PREJUDICE** .......... **13**
**XIII. MENTAL ANGUISH — NOT OPPOSED** .......... **15**
**XIV. THE ABSENCE OF PLAINTIFF'S OWN TESTIMONY DOES NOT ENTITLE AMGUARD TO JUDGMENT** .......... **15**
**XV. PRIOR-CASE FILINGS ARE EVIDENTIARY, NOT CONCLUSIVE** .......... **16**
**XVI. RESPONSE TO THE MOTION FOR SANCTIONS** .......... **17**
- A. The deposition — what the record actually shows .......... 17
- B. Rule 37 supplies the remedy, and it does not authorize this relief .......... 19
- C. Section 1927, the inherent power, and *Goodyear* each independently defeat the request .......... 19
- D. The "inconsistent positions" theory fails on the documents .......... 20
- E. The "pattern" exhibits do not show what AmGUARD says they show .......... 21
- F. Two judges of this District recently declined to sanction on materially the same presentation .......... 22
- G. Discipline requires process this motion does not supply, and the fee claim fails on its own terms .......... 23

**XVII. CONCLUSION AND PRAYER** .......... **23**
**CERTIFICATE OF SERVICE** .......... **24**

**APPENDICES (filed contemporaneously herewith)**

Appendix A — Texas and Fifth Circuit sanctions authority
Appendix B — The prior orders relied on by AmGUARD
Appendix C — Objections to the fee affidavit and ledger
Appendix D — Analysis of the authorities cited in Defendant's motion
Appendix E — Response to Defendant's Statement of Undisputed Material Facts
Appendix (Evidence), Vol. 1 of 2 — Exhibits B-1 through F
Appendix (Evidence), Vol. 2 of 2 — Exhibits G through U

TO THE HONORABLE PETER BRAY, UNITED STATES MAGISTRATE JUDGE:

Plaintiff Stephen Flynn files this Response in opposition to Defendant AmGUARD Insurance Company's Motion for Summary Judgment and for Sanctions Arising from Insurance Fraud [Dkt. 15] and respectfully shows the Court as follows.

## I. INTRODUCTION

1. AmGUARD asks this Court to hold that no reasonable jury could find covered Hurricane Beryl damage at 1039 Evandale Lane, and that no reasonable jury could separate Beryl damage from anything else. AmGUARD's own claim file answers both questions, and AmGUARD filed that file as its own summary judgment evidence.

2. **Pilot — one day after the storm.** AmGUARD's field adjuster, Pilot Catastrophe Services, inspected on July 9, 2024. Pilot performed brittleness tests and reported that “all tests failed”; documented damaged shingles on all four slopes, “extreme granule loss and exposed fibers,” and “multiple areas of water staining/leaks in the attic”; held the Policy's cosmetic-damage endorsement inapplicable because “we have missing and damaged shingles along with leaks noted in the attic” and “[t]he roof is no longer acting as an affective [sic] barrier to protect against or shed water”; wrote a full roof replacement; priced the loss at $63,379.73; and closed: “please issue your draft(s) in the amount listed above.” On AmGUARD's own form Pilot also recorded “Prior Losses: No prior loss activity was reflected on the loss notice nor any evidence found during the inspection” and “There are no coverage issues or denials to consider for this claim.”

3. **Fair Deal — four months later, for more money.** AmGUARD retained a second adjusting firm. Fair Deal Claims reinspected on November 14, 2024 and reported on December 20, 2024: “Both Pilot and the contractor have written for total roof replacement and I'm in agreement with that.” It priced the loss at $88,498.95 — $25,119.22 more than

Pilot — recorded "There are no prior claims in the policy period" and "Less Prior Payments $0.00," and closed with the signed recommendation "I recommend payment to Insured in the RCV amount of $77,425.35." Ex. D (Def. Ex. 19), MSJ pp. 1013–14. **AmGUARD has paid $0.00.** Two adjusting firms of AmGUARD's own choosing scoped this property room by room and line by line and each recommended payment.

4. Six points frame this Response, each developed in the section indicated.

- **Segregation (§ VI).** The allocation evidence AmGUARD says is missing is AmGUARD's own. Pilot's photographs are captioned "No storm related damage" at the front elevation, the right elevation, the left elevation, the garage and the pool, and "cracked caulk around windows- lack of maintenance" at the rear. Fair Deal allocated again four months later. AmGUARD's own retained expert then reconciled the Martinez and Fair Deal estimates to $5,192.38 — 5.5% of the Martinez total — and named four disputed line items. Ex. K (Def. Ex. 24) ¶¶ 25–26.
- **The sanctions motion (§ XVI; Apps. A–D).** AmGUARD chose a deposition date four days after the discovery deadline, filed no re-notice, no motion to compel and no request for relief of any kind, and thirty-one days later moved for $62,846.13 and a referral of opposing counsel to the State Bar. Rule 37(d) reaches the conduct and forecloses the rest. Four of the five federal sanctions authorities were reversed, vacated or cut back on appeal, and in each instance the page AmGUARD pin cites carries the limiting language. Two judges of this District considered materially the same "pattern" showing in January 2026 and declined to sanction; neither decision appears in the motion.

Two record corrections. AmGUARD identifies the policy as No. STHO449756. Mot. at 4, 6. The policy in force on July 8, 2024 is No. STHO546432; STHO449756 is the preceding term, shown on the declarations as the policy being renewed. Ex. F. AmGUARD also dates the Fair Deal report "November 11, 2024." Mot. at 4. The inspection was November 14, 2024 and the report is dated December 20, 2024. Ex. D, MSJ pp. 1013–14, 1069.

## II. PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE

5. Plaintiff's proof is documentary. Rule 56(c)(1)(A) permits a party to establish a genuine dispute by citing "documents, electronically stored information, . . . admissions, interrogatory answers, or other materials." Plaintiff relies principally on AmGUARD's own claim file, which AmGUARD filed as its own evidence, and on Plaintiff's interrogatory answers and admissions, verified under penalty of perjury on May 19, 2026. Ex. J-1. The Response does not depend on Plaintiff's own affidavit: nearly every fact that defeats this

motion was written by AmGUARD's adjusters, its second adjusting firm, and its retained expert.

**Index of exhibits.** The Appendix is Bates-numbered PLTF-RESP 000019–000707, continuous, and is preceded by an Index of Exhibits and a tab sheet for each exhibit. There is no Exhibit A; Exhibit B, the declaration of Plaintiff's estimator, is not filed. Where an exhibit is drawn from Defendant's filing, Defendant's exhibit number and the sequential page of Dkt. 15 as served ("MSJ __") are given. **B-1** R Martinez Consulting Estimate, Oct. 3, 2024 (Def. Ex. 17; MSJ 908–1004). **C** Pilot Catastrophe Final Report and Estimate, July 10, 2024 (Def. Ex. 11; 766–891). **D** Fair Deal Claims Loss Report, Photo Report and Estimate, Dec. 20, 2024 (Def. Ex. 19; 1012–1087). **E** Reservation of Rights, July 19, 2024 (Def. Ex. 12; 892–896). **F** Policy No. STHO546432, incl. Forms HO 99 81 01 18 and HO 142 01 01 22 (Def. Ex. 1; 27–115). **G** April 13, 2019 claim file, Clear Blue/Swyfft/NARS/Alacrity (Def. Ex. 2; 116–222). **H** February 2021 Appraisal Award and panel estimate (Def. Ex. 3; 223–278). **I**, **I-1** AEGIS decision letter, Apr. 20, 2021, and endorsement MS HO 90 (Def. Exs. 4, 6; 279–280, 726). **J**, **J-1** Plaintiff's discovery responses, May 20, 2026, with verification and Box Sign log (Def. Ex. 21; 1092–1117). **K** Declaration of Randall Taylor, July 30, 2026 (Def. Ex. 24; 1127–1137). **L**, **L-2**, **L-3** Deposition correspondence, June 26–30, 2026; Notice of Deposition; Certificate of Nonappearance (Def. Exs. 22–23; 1118–1126). **M** Neurologist note, July 8, 2026. **N** Damages Segregation Index. **O**, **O-1** AmGUARD's expert designations. **P** Memorandum Opinion and Order, *Flynn v. AEGIS*, No. 4:23-cv-2558 (Hanks, J.), Jan. 14, 2025 (Def. Ex. 8; 755–759). **Q** Order of Dismissal, *Shelby v. AmGuard*, No. 4:24-cv-01128 (Eskridge, J.), July 11, 2025 (Def. Ex. 26; 1152–1157). **R** Claim Acknowledgment and Vendor Assignment, July 8–10, 2024 (Def. Exs. 9–10; 760–765). **S** Cease-and-desist letter, May 30, 2025 (Def. Ex. 20; 1088–1090). **T** Quantum estimate and Gadrow affidavit, excerpts (Def. Ex. 5; 457–463, 494–500). **U** Dick Law Firm Client Intake Form, Nov. 16, 2022.

## III. RESPONSE TO AMGUARD'S "STATEMENT OF UNDISPUTED MATERIAL FACTS"

6. Plaintiff's paragraph-by-paragraph response to Section IV of the motion is filed contemporaneously as **Appendix E** and is incorporated by reference. Paragraphs not addressed there are not material to the grounds asserted. Four responses bear directly on the grounds and are stated here.

| **Motion ¶** | **Plaintiff's response** |
|---|---|
| Motion ¶¶ 2–4 (the 2019 claim) — disputed in material part | The claim was against Clear Blue Insurance Company, adjusted by NARS/Alacrity — not AmGUARD and not AEGIS. The file attributes the roof damage to hail (15/15/12/1 hits by slope on a 20-year-old roof) and the interior intrusion to roof-wall flashing and valley metal above the master bedroom, and it affirmatively records "Any Prior Losses?: NA," "Attic is dry," and "No damage to wood floor" in the master bedroom. Most importantly, the assertion that the claim resolved "for a replacement cost value of $26,643.12, net $10,871.42" misdescribes AmGUARD's own exhibit: "$10,871.42" is a software-computed "Net Estimate," not a payment, reached by arithmetic on the sheet's face (RCV $26,643.12, less $7,971.70 depreciation, less the $7,800.00 deductible) under captions that are conditional ("if Depreciation Is Recovered"). The subpoenaed file contains no indemnity check or draft, no payment ledger and no indemnity transaction of any kind; the Timeline records the estimate "marked as completed" June 5, 2019 and the claim "closed" June 7, 2019; and the Approved, Job Started and Reserve fields are blank. Ex. G, MSJ pp. 124–25, 165, 176, 180, 189–91, 222. |
| Motion ¶¶ 13–14 (the Beryl claim and Pilot) — undisputed that the events occurred; | AmGUARD quotes Pilot's "lack of maintenance" and "ongoing" language and omits every finding in the same report that supports coverage: failed brittleness tests on all slopes, attic leaks, the cosmetic exclusion held inapplicable, a full roof replacement written, "no prior loss activity . . . nor any evidence found during the inspection," "no coverage issues or denials," and "please issue your draft(s)." Ex. C, MSJ pp. 767–70. As to roof age, AmGUARD's own Schedule states a 2013 installation year and both of its adjusters applied the 11-year, 67% |

| **Motion ¶** | **Plaintiff's response** |
|---|---|
| disputed as to what AmGUARD omits | factor; AmGUARD underwrote, rated and adjusted this roof as an 11-year roof and cannot now litigate it as an 18-year roof. |
| Motion ¶¶ 25–26 (Randall Taylor) — disputed | Mr. Taylor is a licensed property and casualty adjuster with a bachelor's degree in psychology. He is not a professional engineer, and neither AmGUARD's expert designation nor his own declaration says he is. Cf. Mot. at 13 (“Randall Taylor, P.E.”), at 18 (AmGUARD “retained a licensed professional engineer”), and Def. Ex. 27 ¶ 10 (same). He did not inspect the Property; his declaration lists only documents reviewed. Ex. K ¶¶ 3, 8, 13; Exs. O, O-1. |

## IV. PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

7. The following facts, each supported by AmGUARD's own summary judgment evidence, preclude judgment as a matter of law.

| | **Fact and record source** |
|---|---|
| | AmGUARD's own field adjuster determined, one day after the storm, that Hurricane Beryl damaged this roof and this interior, wrote a full roof replacement, priced the loss at $63,379.73, computed a net claim of $46,721.48, recommended that AmGUARD issue its draft, and reported no evidence of prior loss activity and no coverage issues. Ex. C, MSJ pp. 767–70. |
| | AmGUARD's second retained adjusting firm agreed with total roof replacement, priced the loss at $88,498.95, recorded no prior claims and no prior payments, and recommended payment of $77,425.35 — and AmGUARD has paid nothing. Ex. D, MSJ pp. 1013–14. |
| | AmGUARD's own retained expert reconciles the two Beryl estimates to a $5,192.38 difference — 5.5% of the larger — and identifies four, and only four, disputed items; testifies that the 2021 appraisal estimate contains “no costs for actual repairs” in the Living Room/Family Room or the Entry/Foyer; and testifies that the Kitchen overlap “is unclear.” Ex. K ¶¶ 20–21, 25–26. “Unclear” is the definition of a fact question. |
| | The 2021 appraisal panel photographed damage in the Family Room and Dining Room and annotated it “Not related to freeze claim” on seven occasions, Ex. H, MSJ pp. 246, 249–51, and the 2021 Quantum estimate contains no roof scope at all — 0.00 squares, 0.00 ridge, 0.00 hip, Ex. T. |
| | AmGUARD's own second adjusting firm inspected the Kitchen on November 14, 2024, photographed and captioned “Water damage to kitchen ceiling and crown molding,” and included Kitchen repairs in its Beryl estimate — notwithstanding that the 2021 panel had already awarded ceiling texture, paint and crown molding in that same room. Whether what Fair Deal photographed in 2024 is unrepaired 2021 damage or new Beryl damage is exactly the question AmGUARD's own expert calls “unclear.” Ex. D, MSJ p. 1043; Ex. H; Ex. K ¶ 21. AmGUARD's reservation of rights, meanwhile, cites no exclusion and requests only proof of repairs from two other carriers' claims, Ex. E, MSJ p. 893, and it never issued the written coverage determination that reservation promised — “We will advise you in writing once a final determination has been made.” Ex. E, MSJ p. 896. |

## V. THE GOVERNING STANDARD

8. **Federal practice does not recognize a “no-evidence” motion.** AmGUARD frames its motion as directed “principally on the absence of evidence supporting essential elements of Flynn's claims.” Mot. at 4. Federal Rule 56 has none of the machinery Texas Rule 166a supplies for that device. It states one standard, FED. R. CIV. P. 56(a), and requires the movant to support its assertions by “citing to particular parts of materials in the record” or

by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact," FED. R. CIV. P. 56(c)(1). Even the second option requires a showing. Four settled propositions follow, and each defeats a premise of this motion.

| **Proposition** | **Authority** |
|---|---|
| No "no-evidence" motion, and *Celotex* requires a showing | "[T]he concept of a 'no evidence' summary judgment neither accurately describes federal law nor has any particular import in . . . federal summary judgment procedure." *Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*, 404 F. Supp. 2d 942, 948 (S.D. Tex. 2005); accord *Davis v. Ascension Health & Sedgwick Claims Mgmt. Servs.*, No. A-09-CA-885 LY, 2011 U.S. Dist. LEXIS 162131, at *26–27 (W.D. Tex. Jan. 26, 2011) (R&R), adopted, 2011 U.S. Dist. LEXIS 162135 (W.D. Tex. Mar. 15, 2011). AmGUARD cites *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), at 322 and 325, but not page 323, where the Court stated the movant's affirmative obligation to identify the record materials that "demonstrate the absence of a genuine issue of material fact." AmGUARD's own authority supplies the consequence: "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). |
| The Court may consider AmGUARD's own exhibits, may not weigh them, and AmGUARD bears the burden on its defenses | The Court "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "To be sure, Acadia offers evidence to the contrary. But this evidence serves only to create a factual dispute." *Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 476 (5th Cir. 2022); accord *Will Props. Inc. v. Century Sur. Co.*, No. 1:22-CV-01072-DAE, 2026 U.S. Dist. LEXIS 78101, at *18–19 (W.D. Tex. Jan. 16, 2026). Breach of conditions precedent and prejudice are affirmative defenses on which AmGUARD must "establish beyond peradventure all of the essential elements." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); accord *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). So too exclusions — which is what wear, tear, deterioration and inadequate maintenance are under this Policy. "[T]he burden is on the insurer to prove the applicability of policy exclusions." *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1199 & n.16 (5th Cir. 1993) — one page before the passage AmGUARD quotes, and drawing the line this case requires: "[T]iming of loss is a precondition to coverage, not an exception." |

## VI. AMGUARD SEGREGATED THIS LOSS TWICE, IN WRITING, BEFORE SUIT

9. AmGUARD's lead argument is that Flynn has "no competent evidence attributing any particular compensable damage to July 8, 2024, and none from which a jury could allocate among these causes." Mot. at 3. The standard is stated in the Fifth Circuit's most recent published treatment: "An insured may carry its burden by putting forth evidence demonstrating that the loss came solely from a covered cause *or* by putting forth evidence by which a jury may reasonably segregate covered and non-covered losses." *Advanced Indicator*, 50 F.4th at 477 (citing *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 162

(Tex. 1971)) (emphasis added). Plaintiff satisfies both branches on AmGUARD's own exhibits.

- **Pilot allocated this loss on July 10, 2024.** Pilot did not write a global estimate. It walked the property elevation by elevation and room by room and said in writing what it attributed to the storm and what it did not: “Front Elevation: No storm damage noted. Right Elevation: wind damage noted to downspout and window screen. . . . Rear Elevation: wind damage noted to downspouts, glazing bead and window screens. . . . Left Elevation: wind damage noted to a downspout.” Ex. C, MSJ pp. 768–69. Its photographs carry the same discipline: “No storm related damage” at the front elevation, the right elevation, the left elevation, the garage and the pool; “cracked caulk around windows- lack of maintenance” at the rear; “No water damage noted to ceiling”; “No damage to rear run of subdivision brick fence.” Ex. C, MSJ pp. 788–887. An adjuster who excludes the front elevation, the garage, the pool, the upstairs ceilings and the rear fence, and then prices what remains at $63,379.73, has performed the allocation AmGUARD says is impossible.
- **Fair Deal allocated it again, four months later, for more money.** Its photo report is equally granular — “Wind damage to roof,” “Wind damage to ridge,” “Damaged window beading. Rear elevation,” alongside “No water damage to ceiling,” “Window sills do not have a high moisture reading,” and “Crack on the tile in front of the fireplace is not related to this date-of-loss.” Ex. D, MSJ pp. 1022–68. Fair Deal excluded what it thought unrelated, priced what remained at $88,498.95, and recommended payment. That configuration is decisive. *Hub Texas, LLC v. Arch Specialty Ins. Co.*, No. 5:21-CV-180-H-BQ, 2023 U.S. Dist. LEXIS 239684, at *32–33, *38 (N.D. Tex. Mar. 21, 2023) (R&R) (denying summary judgment where the causation evidence rested in part on “[t]he carrier's principal consultant” and “[t]he carrier's independent adjuster”).
- **AmGUARD's own expert proves the loss is allocable.** Mr. Taylor compared Martinez to Fair Deal and reported that the difference is $5,192.38 and that the disputes are roof sheathing, residential supervision, a safety monitor, and an overhead-and-profit rate of 15% versus a customary 10%. Ex. K ¶¶ 25–26. He does not dispute the rooms, the trades, or that overhead and profit belong in the estimate — only the percentage. A defense expert who narrows two independent estimates of the same storm to a handful of line items has not shown a jury cannot allocate; he has handed the jury the allocation. On the prior claims he testifies that in two of the three rooms common to the 2021 appraisal and the Beryl scope the appraisal estimate has “no costs for actual repairs,” Ex. K ¶ 20, leaving only the Kitchen, where he says it “is unclear if the overlapping damages . . . are related to the same cause of loss,” Ex. K ¶ 21. “Unclear” does not entitle a movant to judgment: “[c]ompeting expert opinions regarding causation or segregation create a genuine dispute of material fact.” *Ept Dos Santos Apts., LP v. State Farm Lloyds*, No. 3:24-CV-00458-DB, 2026 U.S. Dist. LEXIS 39845, at *8–9, *11 (W.D. Tex. Feb. 25, 2026) (R&R), adopted, 2026 U.S. Dist. LEXIS 97461 (Mar. 27, 2026).

10. **Plaintiff's segregation index.** Exhibit N segregates the Martinez estimate line item by line item against every prior scope in the record and against both of AmGUARD's own Beryl estimates. Of $93,691.33:

| | Category | RCV | % of estimate |
|---|---|---|---|
| 1 | No counterpart in any prior claim scope — 100% attributable to Beryl | $24,139.26 | 25.8% |
| 2 | Counterpart in the 2019 scope (Clear Blue/Swyfft — a different carrier; no payment of record; component scopes differ materially) | $57,020.89 | 60.9% |
| 3 | Counterpart in the binding 2021 appraisal award (the Kitchen, plus two floor-protection lines) | $3,682.06 | 3.9% |
| 4 | General conditions / job-wide (allocable pro rata) | $8,849.12 | 9.4% |
| | **TOTAL** | **$93,691.33** | **100.0%** |

Category 3 is stated on the Martinez base. Within it the Kitchen is $2,910.04 — 4.17% of the $69,840.44 line-item base Martinez's own recap uses, and the same 4.17% of the loaded total, because tax, overhead and profit load every line proportionally. Every percentage is computed on the base the source document itself prints.

- The most consequential number is 3.9%. AmGUARD's entire narrative — the sanctions motion, the “same rooms” theme, the “$189,893.16 sworn estimate” — is built on the 2021 freeze claim. Measured against the binding appraisal award rather than the estimate it superseded, that claim touches 3.9% of this one. Nor is a line-item index the only permissible proof, or exactness required. *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993); *Fiess v. State Farm Lloyds*, 392 F.3d 802, 808 (5th Cir. 2004); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 735 F. Supp. 2d 650, 677 n.32 (S.D. Tex. 2010) (AmGUARD's own “fatal”-allocation authority: “courts have not required exact precision when allocating”).
- **This is not a concurrent-cause case at all.** “Where a loss . . . is caused by a covered peril and an excluded peril that are *independent* causes of the loss, the insurer is liable,” and the doctrine “applies to limit recovery only when the loss is caused by two concurrent causes instead of two independent causes.” *Seahawk Liquidating Trust v. Certain Underwriters at Lloyds London*, 810 F.3d 986, 995 (5th Cir. 2016); accord *Frymire Home Servs., Inc. v. Ohio Sec. Ins. Co.*, 12 F.4th 467, 471 n.3 (5th Cir. 2021). Beryl was a discrete, dated, named windstorm; its effects on July 8, 2024 are sequential to and independent of a 2019 hailstorm or a 2021 pipe burst. And where the insured's evidence would permit a jury to find the entire loss came from the covered peril, the doctrine drops out. *Advanced Indicator*, 50 F.4th at 477. Pilot found wind damage on all four slopes and wind-driven rain through the windows; Fair Deal agreed.

## VII. “FULL REPLACEMENT” IS A LABEL; THE LINE ITEMS ARE THE SCOPE

11. Table 1 of the motion does its work through check marks: one under “Roof (complete replacement)” in 2019 and one under the same heading in 2024, suggesting identity. A roof replacement is not one item; it is a bundle of more than twenty separately priced components, and this record contains four different bundles.

| Component | 2019 claim (Alacrity) | AmGUARD's Pilot (7/2024) | AmGUARD's Fair Deal (11/2024) | Martinez (10/2024) |
|---|---|---|---|---|
| Roof section total* | $16,972.58 | $30,383.25 | $33,986.30 | $37,376.42 |
| Tear-off quantity | 38.85 SQ | 40.42 SQ | 38.16 SQ | 37.00 SQ |
| Underlayment | 15 lb felt, 38.85 SQ | 30 lb felt, 40.42 SQ | 30 lb felt, 38.16 SQ | incl. w/ shingle line |
| Ice & water shield | NONE | NONE | 311 SF | NONE |
| Decking / sheathing | NONE | NONE | NONE | 3,696 SF — $14,695.83 |
| Starter course | Continuous row, 402.91 LF | Universal, 391.63 LF | Universal, 402.92 LF | Peel-and-stick, 423.00 LF |
| Ridge / hip cap | 397.87 LF | 416.80 LF | 391.83 LF | 350.00 LF |
| Valley | Aluminum flashing, 113.52 LF | Roll roofing liner, 3.55 SQ | incl. in roof scope | Valley metal, 96.00 LF |
| Pipe jacks | 8 EA plastic | 8 EA | 8 EA | 7 EA lead |
| Gutters / downspouts | Downspouts only — 72 LF torn out, 36 LF replaced; no gutter line | Gutters D&R 168 LF | Gutters R&R 369 LF | NONE |
| Steep-roof charge | 7/12–9/12, 36.28 SQ | 10/12–12/12, 40.42 SQ | 7/12–9/12 (35.55 SQ) + 10/12–12/12 (2.62 SQ) | 10/12–12/12, 3,696 SF |
| Overhead & profit | NONE APPLIED | NONE APPLIED | 10% + 10% | 15% + 15% |

* Bases differ and are shown as each document states them: the 2019 and Pilot roof totals carry no overhead or profit; the Fair Deal total includes $5,664.40 of O&P; the Martinez figure is his pre-tax, pre-O&P base (his own recap shows the roof at $49,814.23 loaded). The table compares component composition, not loaded dollars.

| Observation | Record support |
|---|---|
| AmGUARD's own adjuster documented in 2024 the absence of two components the 2019 estimate had scoped | Pilot wrote that drip edge "is not currently present on the roof during inspection, but is required by code," and photographed "No valley metal," while the 2019 estimate scoped 425.27 linear feet of drip edge and 113.52 linear feet of aluminum valley flashing on a roof Pilot dated at "18 + years old," for a claim whose file contains no record of payment. Ex. C, MSJ p. 768. AmGUARD cannot simultaneously argue that the 2019 work was done (so Flynn is double-dipping) and that it was not done (so the damage is pre-existing). Its own evidence chooses for it. |
| The same problem infects every other row of Table 1 | "Wood flooring, baseboards" in 2019 is not "R&R Snaplock Laminate" plus "R&R Vapor barrier" plus "R&R Baseboard 5¼″ w/shoe" in 2024 — and Pilot and Fair Deal could not agree with each other on the material, Pilot writing engineered wood at $13.59/SF and Fair Deal correcting it to snaplock laminate at $8.45/SF after photographing it, Ex. D, MSJ p. 1031. In the Master Bedroom the 2019 scope was drywall, texture, paint and baseboards and expressly excluded the floor ("No damage to wood floor"); Martinez's largest master-bedroom item is the floor. |

## VIII. WHAT INSURANCE ACTUALLY PAID ACROSS THREE CLAIMS

12. AmGUARD's Table 2 is captioned "Amounts Claimed, Awarded, and Paid." Read the last column.

| Claim / date of loss | Carrier | Estimated / claimed | Determined | ACTUALLY PAID |
|---|---|---|---|---|
| Apr. 13, 2019 — wind/hail | Clear Blue Ins. Co. (Swyfft / NARS / Alacrity) | $26,643.12 RCV; $18,671.42 ACV | Computed "Net Estimate" $10,871.42 — ACV less the $7,800.00 deductible. A software computation | No payment of record |

| **Claim / date of loss** | **Carrier** | **Estimated / claimed** | **Determined** | **ACTUALLY PAID** |
|---|---|---|---|---|
| | | | on the estimate sheet, not a payment. | |
| Feb. 2021 — frozen pipe burst | AEGIS Security Ins. Co. | $189,893.16 | Appraisal award $43,210.66 RCV / $31,363.92 ACV | $1,771.48 |
| July 8, 2024 — Hurricane Beryl | AmGUARD | $93,691.33 | AmGUARD's own vendors: $63,379.73 and $88,498.95 | $0.00 |
| **TOTAL** | | **$310,227.61** | | **$1,771.48** |

- The 2021 claim was not underpaid because the damage was small; it was underpaid because the AEGIS policy capped it. The MS HO 90 endorsement reads: "Our total limit of liability for any loss caused by this peril is $1,500." Ex. I-1, MSJ p. 726. The panel found $43,210.66 of damage; the cap is 3.47% of that award. A sublimit is a coverage limitation — not a finding that the damage did not exist, and emphatically not a finding that it was repaired. It follows that the absence of repair invoices AmGUARD calls suspicious is the arithmetic consequence of AmGUARD's own evidence: a homeowner cannot repair a $43,210.66 loss with a $1,500 check.

## IX. AMGUARD'S CAUSATION AND SEGREGATION AUTHORITIES DO NOT SUPPORT THE MOTION

13. Twenty-six pages cite roughly forty cases, and the motion's force comes not from the record but from the impression that the Fifth Circuit and the Supreme Court of Texas have already decided this case. They have not. Appendix D, Part I, analyzes each authority — *Lyons*, *Lowen Valley*, *Smiley Team II*, *Frymire*, *Cutchall*, *H5R*, *Hamilton*, *Wallis*, *All Saints*, *Martech* and *Puget Plastics* — and shows that they divide into rules quoted at half their length, decisions from postures having nothing to do with Rule 56, and unpublished per curiam dispositions that are not precedent. 5TH CIR. R. 47.5.4. Two characterizations require correction here. **First, *Advanced Indicator* is the controlling published authority, and AmGUARD's distinction of it is the inverse of the record.** It reversed summary judgment for the insurer on the contract, bad faith and prompt-payment claims. AmGUARD distinguishes it in a single clause: "there the expert affirmatively ruled out other causes through reasoned analysis." Mot. at 17. The opinion says nothing of the kind. Its entire evidentiary discussion occupies four sentences at page 476, reciting a public

adjuster who said the damage was “absolutely” caused only by the hurricane, an expert who “also testified at his deposition that the damage was caused by Hurricane Harvey,” and “previous reports demonstrating that the building was in good shape” — with no discussion of methodology or of ruling out alternative causes.

14. **Second, the “epitome of an unsubstantiated assertion” language does not describe an expert.** AmGUARD writes that an expert presentation lacking “any methodology for excluding other causes” is “‘the epitome of an unsubstantiated assertion' and is not competent summary judgment evidence,” citing *Stagliano*, 633 F. App'x at 220, and *Smiley Team II*, 2024 U.S. App. LEXIS 13192, at *2. Mot. at 17. Here is the sentence in its actual context, from the section addressing “Plaintiffs' remaining claims”:

> As to the statutory claims for unfair or deceptive insurance practices, Plaintiffs produced no evidence that we can identify to raise a genuine dispute of material fact. Rather, on appeal Plaintiffs simply repeat their argument from the district court that they “have made a colorable claim for extra-contractual damages . . . couched in long-standing case law” and based on “proper evidence.” We think this represents the epitome of an “unsubstantiated assertion[].”

15. *Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 221 (5th Cir. 2015) (per curiam). The referent of “this” is the plaintiffs' appellate argument on their DTPA and Insurance Code claims. It has nothing to do with any expert, with methodology, or with the contract claim; the court's discussion of the expert affidavit is a separate passage on the preceding page, in entirely different language. *Id.* at 220. Nor is the phrase an evidentiary standard — *Stagliano* borrows it from *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007), where it appears in the recitation of the summary-judgment standard of review. And *Smiley Team II* does not contain the phrase at all; the block quotation it reproduces from *Stagliano* stops before the “epitome” sentence. 2024 U.S. App. LEXIS 13192, at *3–4. Both are unpublished and not precedent.

## X. FILING THREE CLAIMS IN FIVE YEARS IS NOT FRAUD

16. The motion's title asserts "Insurance Fraud." Its body never identifies the elements of that defense, never applies them, and never moves for judgment on it. Because AmGUARD has injected the accusation into a public filing directed in part at counsel, Plaintiff addresses it. AmGUARD's own policy, as amended by its Texas Special Provisions, voids coverage only for an insured who "Intentionally concealed or misrepresented any material fact or circumstance," "Engaged in fraudulent conduct," or "Made material false statements," and then only "[t]o the extent permitted by Texas Insurance Code sections 705.003 and 705.004." Ex. F, Form HO 142 01 01 22, MSJ p. 92. The statement must therefore be false, material, and made intentionally. Section 705.003(a) provides that such a provision "has no effect" and "is not a defense in a suit brought on the policy"; the insurer regains the defense only by showing at trial that the misrepresentation "was fraudulently made,"

| Element | What the motion offers |
|---|---|
| A false statement | AmGUARD does not identify a single statement by Stephen Flynn that is false. It says his discovery answers profess ignorance — an assertion that he said too little, not that he said something untrue. It says the Martinez estimate attributes everything to Beryl — but that is an opinion by a third-party estimator, not a representation by the insured, and one AmGUARD's own two vendors substantially shared. |
| Materiality | AmGUARD does not attempt to show that any answer changed its handling of the claim. It could not: it inspected the day after the loss, completed a full estimate within 48 hours, and its own adjuster recorded "no coverage issues or denials." And materiality is a fact question by statute. TEX. INS. CODE § 705.004(c). |
| Intent | AmGUARD offers no evidence of intent at all. It offers a timeline. A timeline is not a mental state. |
| Reliance and injury | AmGUARD paid nothing. It cannot have been induced to part with money it never parted with. |

17. Because § 705.003 is an affirmative defense the insurer must prove at trial on three conjunctive elements, and because § 705.004(c) makes materiality a question of fact, the endorsement cannot support summary judgment on this record; to the extent AmGUARD develops the theory on reply, it is waived. *Hub Texas*, 2023 U.S. Dist. LEXIS 239684, at *51 n.18. Reduced to its premise, the argument is that a homeowner who files three claims in five years is presumptively defrauding someone. The three losses are three perils, three

mechanisms, three carriers and three different parts of the house: the 2019 hail claim counted hail hits 15/15/12/1 by slope and recorded “Attic is dry”; the 2021 freeze was an interior pipe burst with **0.00 roof squares** and an award confined to the kitchen, laundry, pantry, stairs and an L2 vanity; the 2024 hurricane produced damaged shingles on all four slopes, failed brittleness tests, downed fencing on both sides, and “[w]ater stains/leaks noted throughout” the attic. App. D, Part I. The record contains no evidence — none — that Flynn sought payment twice for the same repaired item, or that he was paid anything on the first claim. What it contains is an insured who reported a hurricane the morning it hit, gave AmGUARD access the next day, let the adjuster into his attic, permitted a second inspection four months later, and produced documents Bates-numbered #0001 through #0291 in discovery. Ex. R, MSJ p. 765; Ex. C, MSJ pp. 767–69; Ex. J. That is cooperation, not concealment.

## XI. THE EXTRA-CONTRACTUAL CLAIMS SURVIVE — DERIVATIVELY AND INDEPENDENTLY

18. AmGUARD's extra-contractual argument is largely derivative: if the contract claim fails, the statutory claims fail. Because the contract claim presents fact questions, so do the statutory claims. It also fails on its own terms. Appendix D, Part II, analyzes each authority; four points control.

| Authority | What it actually holds |
|---|---|
| *Menchaca* announces five rules; AmGUARD briefs two | AmGUARD cites *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018) — the page distilling “five distinct but interrelated rules” — and reports the first and the fifth. It omits the **entitled-to-benefits rule**, *id.* at 495–96 (reaffirming *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 136 (Tex. 1988)); the **benefits-lost rule**, under which an insured may recover benefits “even if the insured has no right to those benefits under the policy, if the insurer's conduct caused the insured to lose that contractual right,” *id.* at 497, 499; and the affirmative half of the independent-injury rule, *id.* at 499. It also omits the holding on the very page it cites — that a contract claim is “‘distinct' and ‘independent'” from extra-contractual claims — the page the Fifth Circuit relied on to reverse summary judgment on extra-contractual claims. *Advanced Indicator*, 50 F.4th at 477. USAA made AmGUARD's argument and lost; the disposition was remand, not rendition. *Menchaca*, 545 S.W.3d at 504, 521. |
| The bona fide | *Castañeda* arose on a jury verdict under legal-sufficiency review — “whether there is any |

| Authority | What it actually holds |
| --- | --- |
| dispute rule has limits AmGUARD does not address | evidence that no reasonable insurer could have denied payment of her claim," *Provident Am. Ins. Co. v. Castañeda*, 988 S.W.2d 189, 193 (Tex. 1998) — the mirror image of Rule 56. *U.S. Fire Insurance Co. v. Williams*, 955 S.W.2d 267, 269 (Tex. 1997), decided on summary judgment, shows what a bona fide dispute is: a question of rule construction where the insurer's reading "was at least arguable; three of the five Commission reviewing officers shared that interpretation." AmGUARD's disagreement is with the inspections, scopes and payment recommendations of its own two adjusting firms. Four limits apply: failure to investigate does not create the defense, *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 n.5 (Tex. 1997); expert-report reliance is no shield where the report was known not to be "objectively prepared" or reliance was unreasonable, *Castañeda*, 988 S.W.2d at 194; an insurer "cannot insulate itself . . . by investigating a claim in a manner calculated to construct a pretextual basis for denial," *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998); and bad faith "is a fact issue," *id. Higginbotham* applies only where the statutory claim shares "the same predicate for recovery as bad faith causes of action in Texas." 103 F.3d 456, 460 (5th Cir. 1997). No such dispute can be established as a matter of law where AmGUARD's own adjuster reported "no coverage issues or denials" and directed payment of $46,721.48, its second vendor recommended $77,425.35, its reservation of rights cited no exclusion and imposed a repair-proof condition found nowhere in the Policy, its May 30, 2025 letter contradicted its own file, Ex. S, MSJ p. 1089; Ex. C, MSJ pp. 767, 770–71, and more than two years passed with nothing paid and no written coverage determination. |
| Chapter 542 is an independent cause of action, and the motion does not address it at all | The Act has two elements, and neither is bad faith: "an insured must demonstrate the insurer's (1) liability under the policy, and (2) failure to comply with the TPPCA." *Advanced Indicator*, 50 F.4th at 477–78. The Texas Supreme Court "treated the TPPCA as a strict liability provision," and "it is not necessary for a plaintiff to prove that the insurer acted wrongfully or in bad faith." *Agredano v. State Farm Lloyds*, 975 F.3d 504, 507 (5th Cir. 2020). A denial is a delay. *Advanced Indicator*, 50 F.4th at 477. Courts routinely deny summary judgment on Chapter 542 while granting it on bad faith — *United Servs. Auto. Ass'n v. Croft*, 175 S.W.3d 457, 474–75 (Tex. App.—Dallas 2005, no pet.), AmGUARD's own authority, rendered take-nothing on every bad faith, DTPA and Insurance Code finding and still affirmed $197,593.35 in prompt-payment damages plus fees. AmGUARD's Section VI.B cites *Menchaca*, *Lowen Valley*, *Williams*, *Castañeda*, *Higginbotham*, *McManus*, *Ruttiger*, *Croft* and *Bradford v. Vento*. **Not one is a Chapter 542 citation.** The motion never addresses § 542.055, § 542.056, § 542.057, § 542.058 or § 542.060 and identifies no evidence of compliance with any of them. Grounds not argued cannot support judgment, *Celotex*, 477 U.S. at 323, and the omission cannot be cured on reply, *Hub Texas*, 2023 U.S. Dist. LEXIS 239684, at *51 n.18. |

Citation note. AmGUARD styles one of these cases "*Higginbotham v. State Farm Lloyds*." The defendant at 103 F.3d 456 is State Farm Mutual Automobile Insurance Company.

## XII. THE CONDITIONS-PRECEDENT GROUND FAILS FOR WANT OF PREJUDICE

19. **No such condition exists.** The Policy requires the insured to "[c]ooperate with us in the investigation," to "[p]rovide us with records and documents we request," and to submit to examination under oath. Ex. F, MSJ pp. 76, 89–90. It contains no provision requiring an insured to prove that he repaired damage from a different carrier's prior claim as a precondition to coverage — and AmGUARD identifies none. The record contains no examination under oath, no demand for a sworn proof of loss (which AmGUARD had to

request within fifteen days "or we waive our right to require a proof of loss," Ex. F, MSJ p. 89), and no written "final determination" of the kind its own reservation of rights promised.

20. **On this record there is no prejudice at all.** AmGUARD says repair records would have let it distinguish Beryl damage from prior damage. Its own adjuster made that distinction on July 9, 2024 without repair records and reported "no prior loss activity . . . nor any evidence found during the inspection." Its second adjusting firm made it again on November 14, 2024 and reported "no prior claims in the policy period." Its retained expert made it a third time. An insurer that twice reached a scope, a price and a payment recommendation cannot claim it was deprived of the ability to evaluate the claim. That is the controlling test: "If the insurer receives its reasonably anticipated benefit despite the insured's breach, the breach is immaterial, the insurer is not prejudiced, and the insurer is not excused from performance." *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 768 (Tex. 2014); accord *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 631–32 (Tex. 2008). The insurer must show "actual evidence that, had [the insured] complied . . . , [the insurer] otherwise would have been in a better position with regard to its rights and/or obligations under the policy." *State Farm Lloyds v. Fuentes*, 597 S.W.3d 925, 936 (Tex. App.—Houston [14th Dist.] 2020). AmGUARD offers none. And one document disposes of much of the theory: AEGIS wrote to Flynn on April 20, 2021 about "the repair invoice totaling $6,600 you submitted from ASM General Contractors . . . for work that was completed at your home." Ex. I, MSJ p. 280. That letter is in this record because AmGUARD filed it.

| Point | Authority |
|---|---|
| AmGUARD's own authorities impose the prejudice requirement | , and Appendix D, Part III, sets out each. *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692, 694 (Tex. 1994), cited at 692–93, holds that an insurer may escape liability "**only when the insurer is actually prejudiced**," and its only "as a matter of law" holding runs in the insured's favor. *Martinez* at 930 holds the same and affirmed on appellate waiver under *Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970), not on any prejudice finding. *Coastal Refining* at 285–86 is that opinion's anti-forfeiture heart, and at 288–89, 298 it requires prejudice to be actual rather than "speculative or potential," lists the particulars an |

| Point | Authority |
|---|---|
| | insurer must identify, and holds that inferring prejudice from the abstract loss of investigative rights "would transfer the burden to the insured to prove a negative." 218 S.W.3d 279 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). And *Clarendon* expressly declined to decide the question it is cited for — "[w]e need not decide whether the presumed prejudice rule is still good law as Clarendon has shown **actual** prejudice" — in an unpublished, non-precedential opinion on agreed cross-motions where the parties agreed the insurer bore the burden. 176 F. App'x 559, 560–62 (5th Cir. 2006). |

## XIII. MENTAL ANGUISH — NOT OPPOSED

21. Plaintiff does not oppose summary judgment on his claim for mental anguish damages and withdraws that element. The withdrawal narrows the issues for trial and does not touch the contract claim, the statutory claims, or the amount of the covered loss. Plaintiff notes only that neither authority AmGUARD cites is a summary judgment case: *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995), reviewed a jury verdict for legal sufficiency and expressly "stop[ped] short of requiring this type of evidence in all cases," and *Saenz v. Fidelity & Guaranty Insurance Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996), reviewed a jury award after "a three-day trial."

## XIV. THE ABSENCE OF PLAINTIFF'S OWN TESTIMONY DOES NOT ENTITLE AMGUARD TO JUDGMENT

22. AmGUARD argues that because Flynn did not appear for deposition, he cannot carry his burden. The argument mistakes whose evidence this is. On every element AmGUARD attacks, the proof is documentary and most of it is AmGUARD's.

| What AmGUARD says is missing | Where the record supplies it |
|---|---|
| A covered loss on July 8, 2024 | AmGUARD's own FNOL and vendor assignment; Pilot's July 10, 2024 report finding wind damage on all four slopes, failed brittleness tests, attic leaks, and the cosmetic exclusion inapplicable; Fair Deal's November 14, 2024 report agreeing on total roof replacement. Exs. R, C, D. |
| The Property's pre-storm condition | Verified answers to Interrogatories Nos. 12 and 13: the roof and interior were "in functional condition" and Plaintiff was "not aware of any unrepaired roof damage" or "pre-existing water damage." Ex. J; Ex. J-1. |
| What was damaged | Verified answer to Interrogatory No. 14, itemizing ten damage areas and a six-part causation basis; the Martinez estimate; and both of AmGUARD's own estimates. Ex. J; Ex. B-1; Exs. C, D. |
| Evidence permitting allocation | Pilot's elevation-by-elevation and room-by-room scope; Fair Deal's; the Martinez estimate; Taylor's own reconciliation of the latter two to $5,192.38; and the segregation index. Exs. C, D, B-1, K, N. |

| What AmGUARD says is missing | Where the record supplies it |
| --- | --- |
| What was paid on the prior claims | Verified answers to Interrogatories Nos. 5 and 9 — figures AmGUARD's own Tables 1 and 2 cite as their source; the 2021 appraisal award; the AEGIS $1,500 endorsement. Ex. J; Exs. H, I-1. |
| Whether prior damage was repaired | Verified RFA No. 13 ("Denied"); and counsel's contemporaneous November 16, 2022 intake record that Plaintiff "has had the damages fixed" and "had to pay out of pocket." Ex. J; Ex. U. |

23. Verified interrogatory answers and admissions are competent summary judgment evidence. FED. R. CIV. P. 56(c)(1)(A). AmGUARD served the discovery, received sworn answers, quotes them throughout its motion, and cites them as the source for two of its own tables. It cannot rely on them for what it likes and call the same answers no evidence for what it does not.

## XV. PRIOR-CASE FILINGS ARE EVIDENTIARY, NOT CONCLUSIVE

24. AmGUARD invokes FED. R. EVID. 801(d)(2) to argue that statements in filings from the concluded AEGIS action are "admissible against Flynn as statements of a party opponent." Mot. at 5. That is a proposition about admissibility, and AmGUARD treats it as one about preclusion. Nothing in the Rule makes an admitted statement conclusive. "A judicial admission is conclusive . . . ; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party," *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476–77 (5th Cir. 2001), and "judicial admissions are not conclusive and binding in a separate case from the one in which the admissions were made," *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1142 (5th Cir. 1991), which sustained the denial of summary judgment on that ground. A party may also plead inconsistently. FED. R. CIV. P. 8(d)(3). Judicial estoppel fails on the acceptance element, which requires that "a court accepted the prior position," *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc), or under Texas law that the party "successfully maintained" it, *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 773, 784–85 (Tex. App.—Houston [14th Dist.] 2006), rev'd in

part on other grounds, 300 S.W.3d 740 (Tex. 2009). Judgment in the AEGIS action was entered against Flynn; no position of his was accepted — and judicial estoppel is an affirmative avoidance AmGUARD has neither pleaded nor briefed. Finally, Rule 801(d)(2) admits AmGUARD's own adjusters' work against AmGUARD; a court in this District has so held on materially identical facts. *Hernandez v. Allstate Vehicle & Prop. Ins. Co.*, No. 1:24-cv-00086, 2025 U.S. Dist. LEXIS 102363, at *11 (S.D. Tex. Apr. 22, 2025) (R&R). Once admitted, prior statements are evidence to be weighed — and weighing is for the jury.

## XVI. RESPONSE TO THE MOTION FOR SANCTIONS

25. The motion asks this Court to shift $62,846.13 to opposing counsel personally, refer him to the State Bar of Texas and to this District's discipline process, and order remedial ethics training. It rests on one litigation event in this case — a non-appearance at a noticed deposition — and otherwise on orders entered by other courts, in other cases, brought by other plaintiffs, against other insurers. Plaintiff addresses the governing law in Appendix A, the prior orders in Appendix B, the fee claim in Appendix C, and the sanctions authorities in Appendix D, Part IV, each incorporated by reference.

### A. The deposition — what the record actually shows.

26. AmGUARD tells the Court that Flynn "refused to appear" and that counsel produced "a client no-show . . . at a deposition noticed twenty-one days in advance without objection." Mot. at 2–3, 19, 23, 25. The deposition did not go forward. The record is nevertheless more particular than the motion allows.

| Date | What happened |
|---|---|
| June 9, 2026 | AmGUARD unilaterally noticed the deposition for June 30, 2026, by Zoom — four days after the June 26 discovery deadline. Ex. L-2. |
| June 26, 2026 | AmGUARD asks Plaintiff to "confirm you will be producing Mr. Flynn"; the same day, Plaintiff answers: "Yes, we confirm Mr. Flynn's deposition." Ex. L, PLTF-RESP 000623. |
| June 27, 2026 | AmGUARD sends the Zoom link; Plaintiff acknowledges receipt. Ex. L, PLTF-RESP 000624–000625. |
| June 30, 10:00 / | The deposition convenes by Zoom; Mr. Flynn does not appear. Certificate of nonappearance |

| Date | What happened |
|---|---|
| 10:15 a.m. | taken, recording only that counsel "advised that Stephen Flynn would not appear" — no colloquy, no stated refusal, no reason. Ex. L-3. |
| June 30, 10:41 a.m. | Nancy Oetjen, Of Counsel at AmGUARD's counsel of record, emails: "**Mr. Flynn was not able to attend his deposition this morning and we need to reschedule.** I am available to reschedule . . . July 13[,] July 14 at 2:00 p.m.[,] July 16[,] July 20[,] July 22." Ex. L, PLTF-RESP 000626–000627. |
| July 1 – 30, 2026 | Plaintiff's counsel did not respond to that email; the dates were conveyed to Plaintiff within two days. AmGUARD did not re-notice the deposition, did not move to compel, and did not seek any relief. |
| July 31, 2026 | AmGUARD files this motion. |

| Point | The record |
|---|---|
| AmGUARD's own contemporaneous words were "not able to attend," not "refused." | That phrase is its own Of Counsel's, written forty-one minutes after the noticed start; the certificate records no refusal by the witness and no reason. Ex. L, PLTF-RESP 000626; Ex. L-3. The motion's repeated "refused" has no source in either document. Plaintiff's verified discovery responses, served six weeks earlier, disclosed "serious ongoing health circumstances, including multiple strokes" seven separate times, and AmGUARD quotes them in this motion, Ex. J; a July 8, 2026 neurologist's note states that he "has suffered multiple strokes that has affected his mobility," "also suffers from short and long term memory," and asks that he be accommodated, Ex. M. An adversary genuinely deprived of testimony moves to compel; AmGUARD did not re-notice on any of the five dates it proposed, did not seek an extension of the deadline it had already overrun, and did not ask this Court for the witness — and Rule 37(d)(3) requires the court to withhold expenses where "the failure was substantially justified or other circumstances make an award of expenses unjust." |
| Rule 37(d) asks who failed to act, and every item of relief is aimed at counsel | The Rule permits an award against "the party failing to act, the attorney advising that party, or both." FED. R. CIV. P. 37(d)(3). AmGUARD chose the date and format; counsel's office confirmed the setting the same day it was asked, acknowledged the Zoom link, advised the reporter at the setting, and relayed the five proposed make-up dates within two days. Ex. L. Counsel has since been unable to secure Plaintiff's participation and has today moved for leave to withdraw. Sanctions must be individualized to the person whose conduct is at issue. *Crowe v. Smith*, 151 F.3d 217, 236 (5th Cir. 1998); *Browning v. Kramer*, 931 F.2d 340, 344–45 (5th Cir. 1991); *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). AmGUARD also calls this a non-appearance "announced by DLF attorney Joe Radler," Dkt. 15 at 23. Mr. Radler is not an attorney of Dick Law Firm, PLLC — not an associate, not an employee, not of counsel. He owns his own firm and appeared for Mr. Flynn in his own right, as AmGUARD's own certificate ("attorney for Stephen Flynn, Joe Radler") and the deposition thread (his JoeRadlerLaw@gmail.com address, against @dicklawfirm.com for each firm participant) reflect; counsel will supply a declaration if AmGUARD disputes it. Ex. L-3, PLTF-RESP 000633; Ex. L. That characterization is the bridge by which AmGUARD carries conduct it attributes to Mr. Radler onto the firm. |
| Rule 37(d) limits expenses to those "caused by the failure," and AmGUARD has proved none | It asks for "no less than $4,707.00 in itemized preparation and attendance time," Mot. at 25, and ¶ 8 of the Cooper affidavit represents that the fee ledger attached to it (Def. Ex. 27, Ex. A) "separately itemizes" that sum. Neither "$4,707.00" nor the corresponding hours figure appears anywhere in that ledger, and the affidavit concedes the court reporter and videographer have not invoiced. The demonstrated out-of-pocket loss is $0.00, and the preparation time is not lost — it is available for the deposition whenever it is taken. Def. Ex. 27 ¶ 8. The only ledger entries tied to the June 30 setting are Entries 431 and 432: 0.70 hours, $161.00. The demand overstates the itemized figure twenty-nine-fold. App. C, Part IX: all June 2026 time across five timekeepers is 44.0 hours and $8,252.00; June entries mentioning the deposition total 17.3 hours and $3,080.00, itself $1,627.00 below the demand. |
| The remedy is the deposition, not a referral | Plaintiff does not oppose reopening discovery for the limited purpose of taking his deposition on any date the Court sets, and does not oppose an order directing him to appear. Counsel will cooperate fully in scheduling and in the transition of the file and will convey any order to Plaintiff; in light of the pending motion to withdraw, counsel does not represent that he can produce the witness. Such an order obtains the testimony AmGUARD says it needs, and Rule 37(b)(2)(A) supplies graduated consequences if the witness then fails to comply — running in the first instance against the party who fails to act. To the extent the Court concludes the |

| Date | What happened |
|---|---|
| | nonappearance warrants an award of the expenses actually caused by it, Plaintiff asks that any award be limited to those expenses and supported by an itemization that in fact exists. |

## B. Rule 37 supplies the remedy, and it does not authorize this relief.

27. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) — AmGUARD's lead authority — addresses this on the page AmGUARD cites: "**when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power.**" *Id.* at 50. Its footnote resolves the Rule 37 question: "Because Rule 37 dealt specifically with discovery sanctions, . . . there was 'no need' to resort to Rule 41(b) . . . or to the court's inherent power." *Id.* at 50 n.14. *Chambers* reached inherent power only because "[m]uch of the bad-faith conduct . . . was beyond the reach of the Rules." *Id.* at 50–51. A deposition non-appearance is the paradigm case inside Rule 37(d), and the Court's concern in that discussion — "needless satellite litigation," *id.* at 51 — describes this motion exactly.

## C. Section 1927, the inherent power, and *Goodyear* each independently defeat the request.

| Limit | Why the motion does not meet it |
|---|---|
| Section 1927 and the inherent power are not satisfied | The statute reaches an attorney "who **so multiplies the proceedings** in any case **unreasonably and vexatiously**" and authorizes only the "**excess** costs . . . reasonably incurred **because of such conduct**." 28 U.S.C. § 1927. Four limits follow, none met: it reaches only "the persistent prosecution of a meritless claim" — persistence, not initiation; both adverbs must be satisfied on "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court," by clear and convincing proof, under a statute that is penal and "strictly construed"; the court must separate sanctionable conduct from the merits, link it to the amount, and differentiate among statutes — impossible on a presentation fusing merits and sanctions into one document; and shifting the *entire* cost of defense — which is what $62,846.13, alternatively $60,015.63, is — demands clear and convincing proof that "**every facet** of the litigation was patently meritless." *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525–26, 528, 531–32 (5th Cir. 2002); *Baulch v. Johns*, 70 F.3d 813, 817 (5th Cir. 1995); *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998); *Hammervold v. Blank*, 3 F.4th 803, 812 (5th Cir. 2021); *Conner v. Travis County*, 209 F.3d 794, 799 (5th Cir. 2000). *Amway* adds that a party predicating a claim "on a controversial and unsettled legal theory should not face sanctions," *id.* at 532 — and Texas concurrent-causation law is unsettled: twice certified, never answered. *Advanced Indicator*, 50 F.4th at 476 n.4. |
| The inherent power is narrower and losing is not bad faith | Inherent powers "must be exercised with restraint and discretion," *Chambers*, 501 U.S. at 44, and on the page AmGUARD cites *Crowe* requires a "specific finding" of bad faith and holds that "[w]here the sanction is disbarment, we have required that this finding be based on 'clear-and-convincing' evidence," 151 F.3d at 226, 236 — the standard AmGUARD's request for referral for possible revocation of admission triggers by *Crowe*'s own terms. And "[b]ad faith does not exist simply because a party exercises bad judgment or is negligent." *Arizpe v. Principal Life Ins. Co.*, No. 3:18-CV-1010-G, 2019 U.S. Dist. LEXIS 151971, at *14 (N.D. |

| Limit | Why the motion does not meet it |
|---|---|
| | Tex. Sept. 6, 2019); accord *Lanier v. AmGuard Ins. Co.*, No. 4:24-CV-03337, 2026 U.S. Dist. LEXIS 75138, at *9 (S.D. Tex. Jan. 26, 2026); *Diamond Consortium, Inc. v. Hammervold*, No. 4:17-CV-452, 2020 U.S. Dist. LEXIS 30149, at *7–9 & n.3 (E.D. Tex. Feb. 20, 2020) (the movant bears the burden; the court "cannot engage in post hoc reasoning"); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978). App. D, Part IV. |
| *Goodyear* caps any award, and other courts' proceedings are beyond this Court's reach | *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017), reversed and set aside a $2.7 million award: such an order "is limited to the fees the innocent party incurred **solely because of** the misconduct — . . . the fees that party would not have incurred **but for** the bad faith"; it "must be compensatory rather than punitive"; and a temporal cutoff will not substitute for a causal one. *Id.* at 103–04, 108, 113–14. AmGUARD's request runs from August 1, 2024 — roughly seven months before this action was filed on March 7, 2025 — and sweeps in $11,733.35 in expert charges incurred to contest causation on the merits. The constraint is textual elsewhere too: Rule 37(d)(3) reaches expenses "caused by the failure," § 1927 reaches costs "because of such conduct," and *Edwards* reversed the portion attributable to pre-removal filings in another court, affirming only "$24,220 . . . incurred after December 7, 1996," 153 F.3d at 244–47. As to the other-court orders, *Chambers* "did not grant a district court the power to police the administrative courts . . . when those courts do not threaten the court's own judicial authority or proceedings." *FDIC v. MAXXAM, Inc.*, 523 F.3d 566, 591, 593 (5th Cir. 2008); accord *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 463 (5th Cir. 2010); *McClenny Moseley & Assocs., P.L.L.C. v. Equal Access Just. Fund, L.P.*, Nos. 23-30670 & 23-30692, 2024 U.S. App. LEXIS 13995, at *7 (5th Cir. June 7, 2024) (unpublished). Every order AmGUARD catalogs is a different case, a different plaintiff, a different insurer, a different court. |

## D. The "inconsistent positions" theory fails on the documents.

28. AmGUARD's central sanctions theory is that counsel attributed the same interior damage to a pipe burst in one court and to a hurricane in another. The documents defeat it.

| Document | What it shows |
|---|---|
| The estimates do not describe the same rooms, the Quantum estimate contains no roof, and the binding determination is the award rather than the rejected estimate | Quantum covers the Kitchen, Laundry Room, Bathroom, Master Bath, Loft, Living Room, Bedrooms 1–3, Baths 2 and 3, the Bath 3 vanity and a pool; Martinez covers the Master Bedroom, Hallway, Living Room, Kitchen, Game Room, Dining Room, Entry, Roof and Exterior — two shared room labels out of thirteen and nine. Quantum's Grand Total Areas page reports 0.00 squares, 0.00 ridge and 0.00 hip, Ex. T, while the roof is 53.2% of the Martinez estimate as loaded ($49,814.23 of $93,691.33); more than half of the Beryl claim cannot possibly have been "attributed to a 2021 pipe burst." And the $189,893.16 Quantum figure was never adopted by anyone: the panel awarded $43,210.66, of which $34,320.64 — 79.4% — is the Kitchen, its largest single line limited to an "ALLOWANCE FOR DAMAGE (DETERIORATED/ROTTED) SECTION OF LOWER CABINETS ONLY." Per AmGUARD's own expert the award contains no repair costs in the Living Room/Family Room or Entry/Foyer, Ex. K ¶ 20, and the panel annotated Family Room and Dining Room damage "Not related to freeze claim" seven times, Ex. H, MSJ pp. 246, 249–51. The 2021 proceeding excluded the very rooms AmGUARD says were double-claimed. And the sentence AmGUARD builds on — that the estimate "details damage that was not included in Defendant's estimate or payment" — appears in a subparagraph on the breach element, names no room, and makes no representation about the Property's condition on any date. |
| Counsel's own intake form resolves the theory | On November 16, 2022 — twenty months before Beryl, in a different case, against a different carrier — Dick Law Firm took Mr. Flynn's intake on the AEGIS freeze claim. It records, in the client's own account: "He also had freeze damage interior - (pipe burst) and **he has had the damages fixed. He had to pay out of pocket.** He has had a stroke and cannot locate documents - said he **throws receipts away and does not have paperwork**." Ex. U, PLTF-RESP 000707. **Uncompensated and unrepaired are not the same thing**: if Mr. Flynn repaired the 2021 damage at his own expense, it was true in August 2024 both that AEGIS had never paid for it and that Beryl had damaged the interior again three weeks earlier. The |

| Document | What it shows |
| --- | --- |
| | form also explains the missing repair invoices contemporaneously and disinterestedly, and corroborates the memory limitation AmGUARD calls evasion — asked whether he had filed a claim on the property before, the 2022 answer is "N/A." That is consistent with his verified RFA No. 13. Ex. J. And Judge Hanks's opinion — the court that actually saw the conduct — contains no finding of fraud, misrepresentation or inconsistency, no Rule 11 or § 1927 analysis, and no sanction. Ex. P. |
| A demonstrable error in the movant's expert declaration | Mr. Taylor declares under penalty of perjury that the Martinez estimate has "a date of loss of 07/26/2024." Ex. K ¶ 23. That estimate has no date-of-loss field at all, and the phrase appears nowhere in its ninety-six pages. Ex. B-1, MSJ p. 909. The figure is the entry captioned "Date Entered" — the date R Martinez Consulting opened its file, three days after Mr. Flynn retained counsel. That field appears on every Xactimate cover page here, including AmGUARD's own: the 2021 freeze appraisal estimate prints "Date Entered: 2/26/2024," Ex. H, MSJ p. 225, and Fair Deal's Beryl estimate prints "Date Entered: 10/16/2024" beside "Date Inspected: 11/14/2024," Ex. D, MSJ p. 1069. On that reading the 2021 freeze occurred in 2024 and AmGUARD's own adjusting firm dated Beryl to October. The date of loss has never been in doubt. Exs. R, C, D, E. |

### E. The "pattern" exhibits do not show what AmGUARD says they show.

29. **Not one of the sanctions orders AmGUARD invokes has ever received substantive appellate review of whether the conduct was sanctionable.** Appendix B addresses each in full; five points bear on the weight the catalog can carry.

| Order | What the record shows |
| --- | --- |
| *Shelby* imposed no sanction | Judge Eskridge dismissed under Rule 41(b) "for failure to abide by court order and for untimely prosecution." No monetary sanction, no Rule 11 finding, no referral — the order states the court "has under advisement" whether to refer, and more than a year later counsel is aware of none. The "pattern of abusive litigation tactics" sentence is an observation the holding does not rest on. Ex. Q (Def. Ex. 26). |
| The catalog's centerpiece was never merits-tested, and its dollar figure was reversed | Fee-shifting in *Aleman* rested on four independent grounds and prior appellate counsel challenged only one: "Because appellants do not challenge all the grounds under which the attorney's fees award was imposed, we must uphold the award." Forfeiture, not validation. The one component the court did review, it reversed — "the trial court erred in awarding Standard $137,000 in trial court attorney's fees," for want of evidence of "the skill, experience, or reputation of any other attorney, paralegal, or legal assistant for whom fees were sought." *Aleman v. Std. Cas. Co.*, No. 01-23-00572-CV, 2025 Tex. App. LEXIS 6574, at *57 & n.19, *70, *73 (Tex. App.—Houston [1st Dist.] Aug. 26, 2025) (mem. op.), mandamus denied sub nom. *In re Aleman*, 2026 Tex. App. LEXIS 3063 (Apr. 2, 2026) — eleven months before this motion was filed. The largest single figure in the "judicially documented pattern" no longer exists. |
| Two of the catalogued matters are not sanctions against counsel at all | — a show-cause order "related to Richard Gadrow" and an order "striking Gadrow and noting that he had died," Ex. Q at 4, neither of which AmGUARD has filed — and **the two remaining final orders, both from a single county court in 2018, were never tested on their merits**. In *Etienne* the challenge to the $4,000.00 sanction was dismissed for want of jurisdiction: "Because no one personally aggrieved by the sanctions order has appealed it, we lack jurisdiction to review the order." No. 14-18-00665-CV, 2019 Tex. App. LEXIS 8195, at *8 (Tex. App.—Houston [14th Dist.] Sept. 10, 2019, pet. denied) (mem. op.). *Nguyen* affirmed on the same independent-ground rule that decided *Aleman*, with the fee-evidence challenge "waived because of briefing deficiency," and dismissed the firm's own appeal for want of jurisdiction because it "was not named as a party to the final judgment being appealed." *Lam Nguyen v. Aventus Ins. Co.*, No. 14-19-00607-CV, 2021 Tex. App. LEXIS 7996, at *1, *4, *9 (Tex. App.—Houston [14th Dist.] Sept. 30, 2021, no pet.) (mem. op.). AmGUARD asks that every sanction be directed at Dick Law Firm, PLLC; the only order in its recital that is both final and names the firm is *Etienne*. |

| Order | What the record shows |
|---|---|
| *Hudson* (Def. Ex. 25) | Counsel does not dispute that the order contains findings to the effect AmGUARD describes. Def. Ex. 25 at 6–7, ¶¶ 25, 27–28. Three omitted facts bear on its weight: it is watermarked "UNOFFICIAL COPY" on every page notwithstanding the exhibit list's description of it as a "certified copy," and its signature block names no judge; its footnote 3 reduces the award thirty percent for "presumably same or similar services provided in two similar suits," identifying those suits as *Aleman* and *Burns* — the same matters AmGUARD offers as independent pattern entries, so that court treated all three as one body of work and measured its award against an *Aleman* baseline since reversed; and it is a Chapter 10 sanction resting on expert designations filed before the experts were retained, claims barred by limitations, and a client who had not read her own petition. None of that describes this case: the Martinez estimate issued before suit and is AmGUARD's own Exhibit 17, analyzed line by line by its engineer; no claim here is barred by limitations; and Mr. Flynn verified his discovery responses. Ex. K ¶¶ 25–26. |

**F. Two judges of this District recently declined to sanction on materially the same presentation.**

30. AmGUARD cites neither of the two most closely analogous decisions, both from this District, both issued in January 2026, and both involving the same counsel and the same *Shelby* record. In *Lanier v. AmGuard Ins. Co.*, No. 4:24-cv-03337, 2026 U.S. Dist. LEXIS 75138 (S.D. Tex. Jan. 26, 2026) — same defendant, same defense firm, same combined motion, same "pattern" theory — the court granted summary judgment and denied sanctions:

> The Court is aware of and does not minimize the observations of another judge in the Southern District of Texas concerning Plaintiff's counsel . . . including findings of a "pattern of abusive litigation tactics" . . . . Those warnings are serious. Nonetheless, the Court limits its analysis to the specific record and conduct before this Court. On the record presented here, the Court finds that Plaintiff's claims, while ultimately unsupported by competent summary judgment evidence, were not groundless, brought in bad faith, or pursued for the purpose of harassment.

31. *Id.* at *8–10. AmGUARD obtained **full summary judgment** in *Lanier* and was still denied sanctions on this theory, against this counsel, on this record — and it was the same defense firm that signed the motion now before the Court. Six days earlier, in *Reagins v. Meridian Security Insurance Co.*, No. 4:24-CV-01404, 2026 U.S. Dist. LEXIS 80764 (S.D. Tex. Jan. 20, 2026), the court struck an affidavit under the sham-affidavit doctrine, recited the entire *Shelby* catalog in a footnote — *Burns*, *Aleman*, *Etienne* and *Nguyen* included — and nonetheless held, twice over, that "it does not find that any other sanctions are warranted at

this time." *Id.* at *5, *6; catalog at *6–7 n.1. Both courts had the material AmGUARD offers here. Both declined to sanction on it.

### G. Discipline requires process this motion does not supply, and the fee claim fails on its own terms.

| Ground | Why it fails |
|---|---|
| Process | Attorney discipline proceedings are "adversary proceedings of a quasi-criminal nature," *In re Ruffalo*, 390 U.S. 544, 550–51 (1968), requiring notice and an opportunity to be heard, proof by clear and convincing evidence, and strict adherence by the court to its own disciplinary rules — and the Fifth Circuit has reversed such discipline for each failing and as "overbroad and excessive." *Crowe*, 151 F.3d at 229–31 & n.17; *In re Thalheim*, 853 F.2d 383, 388, 389 n.9 (5th Cir. 1988); *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 229 (5th Cir. 1998); *In re Medrano*, 956 F.2d 101, 102–05 (5th Cir. 1992); *Scaife v. Associated Air Ctr., Inc.*, 100 F.3d 406, 412 (5th Cir. 1996). *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987), is satisfied only where the court relies on "its own research (as supplemented by appropriate briefing by the parties)," thereby "avoid[ing] placing [the opposing party's] counsel in the role of prosecutor for the disbarment proceedings." *Crowe*, 151 F.3d at 232–33. AmGUARD — an adversary with a direct financial interest — asks to serve as charging instrument, evidence-gatherer and advocate for discipline, appended to a summary judgment motion, on a certificate of conference dated the day of filing. Nothing in 28 U.S.C. § 636, under which the parties consented, mentions admission to the bar, revocation of admission, or attorney discipline. App. D, Part IV. |
| The fee affidavit will not support the amount | It is an **unfilled template**: the filed document prints the literal placeholder "[FULL NAME]" for six of the eight timekeepers — approximately 78% of the hours and 73% of the fees — while ¶ 12 swears to those same persons' "experience, reputation, and ability." Def. Ex. 27. It **does not reconcile to the records it authenticates**: ¶ 5 reports 240.6 hours where the ledger (Def. Ex. 27, Ex. A) totals 240.3; its "Fees After Billing Adjustments" column exceeds its "Fees Incurred" column for one timekeeper; and it disagrees with the invoices on the affiant's own name, being styled "Affidavit of Jamie P. Cooper" while the ledger bills the identical "JCO" initials to "Jamie C Cooper" in all sixteen fee summaries. It **includes time billed to a different case** — three entries dated June 29, 2026 billing 4.0 hours and $920.00 for review of "prior work in the *Lanier v. AmGUARD* Motion for Summary Judgment" and the "*Lanier v. AmGUARD* deposition transcript." And it is **not segregated**: AmGUARD seeks fees "from August 1, 2024," and exactly $2,830.50 — eighteen entries, 11.7 hours — predates this lawsuit entirely. App. C, Part II. Each defect is independently fatal under *Goodyear*'s but-for standard and *Amway*'s requirement that a court "link the sanctionable conduct to the size of the sanctions," 280 F.3d at 526, 531; accord *Braden v. South Main Bank*, 837 S.W.2d 733, 741 (Tex. App.—Houston [14th Dist.] 1992, writ denied). |

## XVII. CONCLUSION AND PRAYER

32. AmGUARD closes with a sentence: "Three claims, five years, one house, and overlapping damage." Mot. at 25. The record supports a different one: three claims, five years, one house, three carriers, three perils — and $1,771.48 paid. The day after Hurricane Beryl, AmGUARD's own adjuster stood on this roof, failed every brittleness test, photographed the attic leaks, wrote a full replacement, priced the loss at $63,379.73, and asked AmGUARD to issue its draft; four months later its second adjusting firm agreed and

recommended $77,425.35. AmGUARD paid nothing, and now says a jury could not determine what Beryl did to this house. As to sanctions, the motion identifies one discovery event here — a missed Zoom setting the movant's own counsel described that morning as the witness being "not able to attend," never re-noticed and never moved to compel, for which its own affidavit itemizes no out-of-pocket expense. Everything else happened in other courtrooms, in other cases, involving other parties.

33. Plaintiff respectfully requests that the Court DENY the Motion for Summary Judgment in its entirety, except as to the withdrawn element of mental anguish damages; DENY the Motion for Sanctions in its entirety, with a finding that it was not substantially justified; and grant Plaintiff such other and further relief, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

/s/ Eric B. Dick
Eric B. Dick, LL.M.
Texas Bar No. 24064316
S.D. Tex. Bar No. 1020775
**DICK LAW FIRM, PLLC**
3701 Brookwoods Drive, Houston, Texas 77092
(713) 224-3400 · (832) 207-2007 (fax)
eric@dicklawfirm.com
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on ____________, 2026, a true and correct copy of the foregoing instrument was served on all counsel of record via the Court's CM/ECF system: Christopher W. Martin and Jamie P. Cooper, MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P., 808 Travis, Suite 1100, Houston, Texas 77002, Attorneys for Defendant AmGUARD Insurance Company.

/s/ Eric B. Dick
Eric B. Dick