IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN FLYNN,<br>*PLAINTIFF,* | §<br>§<br>§ | |
| VS. | § | Civil Action No. 4:25-cv-4291 |
| AMGUARD INSURANCE COMPANY,<br>*DEFENDANT,* | §<br>§<br>§ | |

**DEFENDANT AMGUARD INSURANCE COMPANY'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND FOR SANCTIONS**

TO THE HONORABLE PETER BRAY, U.S. MAGISTRATE JUDGE:

Defendant AmGUARD Insurance Company ( "AmGUARD ") files this Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment and for Sanctions ( "Response ") [Dkt. 21], and respectfully shows the Court as follows:

## I. INTRODUCTION

Plaintiff's Response confirms the dispositive point rather than answering it. AmGUARD's Motion showed that Flynn cannot prove a covered loss that occurred during the policy period and cannot give a jury a reasonable basis to separate any Hurricane Beryl damage from the 2019 wind and hail loss that was never repaired the 2021 freeze loss his own counsel valued at $189,893.16, and ordinary deterioration. [Dkt. 15 at pg. 2-3]. Plaintiff's Response does not identify a single piece of competent evidence that dates Flynn's claimed damage to July 8, 2024 or that allocates it among these overlapping causes. Instead, Flynn re-labels AmGUARD's adjusters' repair estimates as "allocation, " offers a new attorney-prepared segregation index that concedes roughly two-thirds of the claimed loss overlaps prior scopes, and withdraws his mental-anguish claim outright. [Dkt. 21 at 9, 17].

On the record actually before the Court, the segregation burden the Fifth Circuit places on the insured is not met, the extra-contractual claims fail with the contract claim, and the deposition non-appearance, which Flynn does not deny and now offers to cure, independently entitles AmGUARD to relief under Fed. R. Civ. P. 56. AmGUARD is further entitled to sanctions against counsel, Eric Dick of Dick Law Firm ("DLF") pursuant to the Court's inherent authority, 28 U.S.C. § 1927, and Federal Rule of Civil Procedure 37(d). Notwithstanding AmGUARD's objections to Plaintiff's noncompliant Response and Exhibits M and N, this Reply will only address the arguments in the 24-page primary Response, in accordance with the court-ordered page limit.

## II. OBJECTION TO PLAINTIFF'S NONCOMPLIANT RESPONSE AND SUMMARY JUDGMENT EVIDENCE

### A. Plaintiff's Response Violates Two Court Orders by Exceeding the 25-Page Limit.

AmGUARD objects to Plaintiff's Response because it materially exceeds this Court's ordered page limits and is in violation of two Court orders. [Dkt. 11; Dkt. 19]. Accordingly, AmGUARD requests that the Court strike Plaintiff's Response in its entirety. In the alternative, AmGUARD requests that the Court disregard any argument, objection, or authority appearing beyond page 24 of Plaintiff's filing, including disregarding any reference to Appendices A-E and V-W when considering those 24-pages. In either case, AmGUARD also requests that Plaintiff not be allowed to seek leave to exceed the page limit, since Plaintiff was previously ordered, and failed, to cure this deficiency.

On September 29, 2025, the Court ordered that motions and responses "shall not be longer than 25 pages " and that parties "NOT file multiple motions in an effort to exceed the page limit. " [Dkt. 11 at 2]. Plaintiff disregarded that Order on August 21, 2026, by filing a 203-page

Response. [Dkt. 18].[1] The Court struck the filing and ordered Plaintiff to submit a compliant amended response. [Dkt. 19].

Plaintiff again violated the Court's orders on August 28, 2026, by filing a 126-page Response. Although the brief itself is styled as 24 pages, Plaintiff simply moved more than 100 pages of substantive argument into Appendices A-E. [Dkt. 21]. Those appendices contain additional sanctions briefing, analysis of AmGUARD's authorities, and responses to AmGUARD's statement of facts, not merely exhibits.[2] Plaintiff neither sought nor obtained leave to exceed the page limit.

The Court should not permit through appendices what it has already prohibited in a single filing. Enforcing page limits, including striking or disregarding noncompliant briefing filed without leave, falls within a court's inherent authority to manage its docket. *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). Parties may not evade page limits by relocating arguments to separate filings, and courts may disregard arguments incorporated by reference when doing so circumvents page limits without leave. *Normore v. Dallas Indep. Sch. Dist.*, 677 F. Supp. 3d 494 (N.D. Tex. 2023). Courts have likewise denied leave to exceed page limits where there is "no indication of novel issues requiring extensive briefing beyond the Court's page limits. " *Martinez v. Comm'r of Soc. Sec.*, No. EP22CV00135KCATB, 2022 WL 17097752 (W.D. Tex. Nov. 21, 2022); *See also Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*, 233 F.R.D. 492, 493 (E.D. Tex. 2005).

Accordingly, because Plaintiff filed a response that exceeds the applicable 25-page limit without leave of court, the Court should strike the Response in its entirety or, at a minimum, strike

---

[1] Plaintiff's Response was 102-pages, and Appendices A-C containing additional arguments was 101-pages.

[2] Plaintiff's Table of Contents lists Appendix D and E, but the actual appendices are incorrectly labeled V and W.

any argument, objection, or authority appearing beyond page 24, and disregard any reference to Appendices A-E and V-W. The Court should further deny any request for leave to exceed the page limit.

### B. The Neurologist Note (Ex. M) and Damages Segregation Index (Ex. N) are Unauthenticated Hearsay and Undisclosed Opinions From Witnesses Flynn Never Designated.

#### *1. Exhibit M – The Neurologist Note.*

Exhibit M is a two-page neurologist note regarding Stephen Flynn dated July 8, 2026. [Dkt. 21 at 115; Dkt. 21-5, PLTF-RESP 000637-000638]. Plaintiff offers the note as medical corroboration of his health circumstances, but no witness authenticates it, no affidavit or business-records foundation accompanies it, and the author provides no declaration or testimony. [Dkt. 21-5 at 735]. The note contains out-of-court statements offered for their truth and includes medical diagnoses and causation opinions. Fed. R. Evid. 802. The neurologist was never disclosed as a retained or non-retained expert under Rule 26(a)(2), and the note first appeared as an exhibit to Plaintiff's Response nearly five months after the April 3, 2026 expert-designation deadline. [Dkt. 14; Dkt. 11]. Because Plaintiff failed to disclose the neurologist, any expert opinions must be excluded under Rules 26(a)(2) and 37(c)(1). Diagnosing strokes and attributing cognitive or mobility deficits to them requires expert testimony and falls beyond the scope of lay opinion. Fed. R. Evid. 701(c). The note therefore cannot be presented in admissible form and should not be considered at summary judgment. Fed. R. Civ. P. 56(c)(2).

#### *2. Exhibit N – The Damages Segregation Index*

Exhibit N is a ten-page Damages Segregation Index that Plaintiff's counsel prepared for the Response and offers as the answer to AmGUARD's allocation argument. [Dkt. 21-5 at 737, PLTF-RESP 000639-000648]. No witness authenticates the Index, no declarant with personal knowledge provides a foundation for its allocation decisions, and the purported supporting

declaration and CV of Plaintiff's estimator were never filed. [Dkt. 21 at 116; Dkt. 21-4; Dkt. 14 at 2; Dkt. 14-1]. The Index contains out-of-court assertions offered for their truth and reflects causation and cost-allocation opinions regarding the segregation of alleged storm damage from prior and pre-existing damage across a 97-item estimate. Fed. R. Evid. 802. Yet the preparer was never designated as an expert, despite Plaintiff's obligation to disclose any such opinions by April 3, 2026. [Dkt. 11]. Those undisclosed opinions must be excluded under Rules 26(a)(2) and 37(c)(1), as apportioning a single estimate among multiple loss events is technical analysis beyond lay opinion. Fed. R. Evid. 701(c). A segregation chart prepared by counsel is argument, not evidence, cannot substitute for expert testimony, and cannot be presented in admissible form under Rule 56(c)(2). Accordingly, Exhibits M and N should be struck and not considered.

## III. REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO AMGUARD'S MOTION FOR SUMMARY JUDGMENT

### A. The Rule 56 Standard is Exactly the One AmGUARD Invoked, and the Burden Flynn must carry is his own.

Flynn's assertion that "[f]ederal practice does not recognize a 'no-evidence' motion" misses the point. [Dkt. 21 at 4]. AmGUARD did not move under Texas Rule 166a(i). It moved under Rule 56 and *Celotex*, which permit a movant to satisfy its burden by identifying the absence of evidence on an element for which the nonmovant bears the burden of proof. The burden then shifts to the nonmovant to produce specific evidence creating a genuine fact issue. 477 U.S. 317 (1986); [Dkt. 15 at 13]. Conclusory allegations, unsubstantiated assertions, and a mere scintilla of evidence are insufficient. *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994).

Flynn's effort to recast timing and segregation as exclusions that AmGUARD must prove is foreclosed by the authorities he cites. Under Texas law, proving that the claimed loss occurred during the policy period is an essential element of coverage that the insured must establish. *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1200 (5th Cir. 1993); *Stagliano v.*

*Cincinnati Ins. Co.*, 633 F. App'x 217, 219 (5th Cir. 2015). Likewise, segregating covered from noncovered damage is part of the insured's burden, and failure to do so is fatal under Texas's concurrent-causation doctrine. *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988); *Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 477 (5th Cir. 2022). AmGUARD met its Rule 56 burden by identifying the absence of competent evidence on these coverage elements, and Plaintiff has failed to produce any evidence sufficient to carry its burden.

## B. Flynn Still Offers no Evidence Segregating Beryl Damage From the 2019 and 2021 Losses

### *1. AmGUARD's adjusters priced the observed damage, and they did not date it or a allocate it across the three claims*

Flynn's core argument is that AmGUARD already segregated the loss because Pilot and Fair Deal excluded certain areas and estimated the remaining damage at $63,379.73 and $88,498.95. [Dkt. 21 at 7-8]. But that addresses only whether damage existed and what it would cost to repair. It does not address when the damage occurred or which of the 2019, 2021, or 2024 events caused it. That is the allocation issue that matters.

*Lowen Valley* draws the same distinction. There, the Fifth Circuit held that an adjuster's assessment that hail damaged a roof and the cost to repair it did not establish when the damage occurred. Because multiple storms were involved and only one was covered, evidence linking damage to hail did not enable a jury to segregate covered from uncovered damage. *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170-71 (5th Cir. 2018). The same is true here. Neither Pilot nor Fair Deal reviewed the 2019 claim file or 2021 appraisal record, and neither performed any allocation analysis among the three claimed loss

events. An adjuster's observation that no prior damage was visible is not an allocation opinion. [Dkt. 15 at 10].

Flynn's reliance on Randall Taylor fares no better. Taylor's comparison of the Martinez and Fair Deal estimates merely reconciles two estimates for the same claimed 2024 loss and assumes the very causation issue Flynn must prove. [Dkt. 21 at 8]. It does not allocate damage among the 2019, 2021, and 2024 events. On the relevant issue, Taylor's testimony supports AmGUARD. He identified overlap between the 2019 claim and the Martinez estimate, including the roof and several interior rooms, and testified that overlapping kitchen damages could not be attributed to a single cause. [Dkt. 15 at 13]. Whether Taylor is an adjuster or an engineer is beside the point. AmGUARD does not bear the burden of proving causation, and Taylor's inability to attribute the overlapping damage to a single event only underscores Flynn's failure to carry his burden.

***2. The Martinez estimate remains the only causation evidence, and it supplies no methodology.***

Flynn's causation case rests on Ricardo Martinez and the Martinez estimate. [Dkt. 15 at 12]. Yet the estimate attributes all claimed damage, including the same roof and interior areas implicated in the 2019 and 2021 claims, solely to Hurricane Beryl without allocating any damage to prior losses or wear and tear and without explaining its methodology. [Dkt. 15-34]. That is precisely the type of conclusory causation evidence the Fifth Circuit found insufficient in Stagliano. 633 F. App'x at 219.

Flynn cites Advanced Indicator, but that case underscores the deficiency in his proof. There, the insured presented testimony that the covered storm was the sole cause of the damage, supported by evidence the property was previously in good condition. 50 F.4th 469. Flynn offers no comparable evidence. He relies on an unallocated estimate that ignores prior claims, provided no deposition testimony, and professes little knowledge of the 2019 claim despite undisputed evidence of prior damage to the same roof and rooms. [Dkt. 15 at 12, 15]. The sole-cause theory requires competent evidence that Beryl alone caused the loss, and a bare estimate devoid of supporting analysis is not enough.

***3. Flynn's Damages Segregation Index confirms the overlap rather than curing it.***

Flynn's Exhibit N is attorney argument, not evidence, and it undermines his position. By Flynn's own analysis, only 25.8% of the Martinez estimate has no counterpart in a prior claim, while 60.9% overlaps the 2019 claim and another 3.9% overlaps the 2021 appraisal award. [Dkt. 21 at 9]. Thus, nearly two-thirds of the claimed loss overlaps prior claims.

Whether a prior claim involved a different carrier or resulted in payment is beside the point. The issue is causation and timing, not who paid the claim. Unrepaired prior damage remains part of the property's condition in 2024. Under Lyons and McKillip, Flynn must present evidence permitting a reasonable allocation of damage among competing causes. An index that acknowledges substantial overlap but provides no allocation analysis does not satisfy that burden.

Because Flynn offers no competent evidence that the claimed damage occurred during the policy period or that covered damage can be segregated from prior losses, his breach-of-contract claim fails as a matter of law. *Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co*., 50 F.4th 469 (5th Cir. 2022); *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195 (5th Cir. 1993).

**C. The Extra-Contractual Claims Fail With the Contract Claim and Under the Bona Fide Dispute Rule. Further, Flynn is Unopposed to Summary Judgment on His Mental Anguish Claim.**

Flynn concedes his extra-contractual claims are "largely derivative. " [Dkt. 21 at 12]. Under *Menchaca*, an insured cannot recover for statutory violations absent either a right to policy benefits or an independent injury. Flynn has neither. Because he cannot establish a covered loss and identifies no independent injury, his statutory and bad-faith claims fail with his contract claim. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018).

Flynn's reliance on other Menchaca rules is misplaced. The controlling rule here bars recovery where there is no right to benefits. The same defect defeats his Chapter 542 claim because prompt-payment liability requires coverage under the policy. As Flynn cannot establish coverage, his prompt-payment claim fails as a matter of law. *See Advanced Indicator*, 50 F.4th at 477-78.

The record also establishes a bona fide coverage dispute, which precludes bad faith and related statutory claims. *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189 (Tex. 1998*); U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267 (Tex. 1997); *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456 (5th Cir. 1997), 103 F.3d 456. AmGUARD promptly acknowledged the claim, inspected the property, requested information, reinspected, and retained an expert. Those actions reflect a reasonable coverage investigation, not bad faith.

Finally, Flynn does not oppose summary judgment on mental anguish damages and expressly withdraws that claim. [Dkt. 21 at 17]. Summary judgment should therefore be granted on that issue as unopposed.

**D. The Fraud Framing Does not Control the Coverage Analysis.**

Flynn devotes a section to arguing that "[f]iling three claims in five years is not fraud " and that AmGUARD never moves for judgment on a statutory misrepresentation defense. [Dkt. 21 at 11]. That is beside the point. AmGUARD's entitlement to summary judgment does not

depend on proving a misrepresentation defense under Texas Insurance Code §§ 705.003–705.004. It rests on Flynn's failure to carry his own burden to prove a covered, in-period, segregated loss. The claim history is material because it establishes the overlapping, undisputed sources of damage that Flynn's evidence cannot allocate, and not because AmGUARD must prove intent to defraud to prevail on Rule 56. Flynn's fraud-elements argument answers a motion AmGUARD did not make.

**E. Flynn's Breach of Conditions and Deposition Non-Appearance Independently Defeat His Claims.**

AmGUARD's coverage argument is sufficient on its own. Alternatively, Flynn materially breached the Policy's cooperation and records provisions by withholding repair information and refusing to appear for deposition, causing actual prejudice. See *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691 (Tex. 1994); *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630 (Tex. 2008). A breach is material only if it deprives the insurer of an expected benefit; otherwise, it is immaterial. *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761 (Tex. 2014).

Flynn argues AmGUARD was not prejudiced because its adjusters could scope and price the loss without repair records. [Dkt. 21 at 14]. But the missing benefit was not pricing the damage. It was determining whether the damage was attributable to the 2019, 2021, or 2024 claims. The withheld repair records and Flynn's deposition testimony were critical to that allocation analysis. Unlike the policy provision in *Greene*, the cooperation and records conditions imposed affirmative duties on Flynn, making the prejudice analysis applicable. *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761 (Tex. 2014).

*Coastal Refining* is distinguishable. There, the insurer identified no independent prejudice. *Coastal Ref. & Mktg., Inc. v. U.S. Fid. & Guar. Co.*, 218 S.W.3d 279 (Tex. App. 2007). Here, the prejudice is concrete: the loss of evidence necessary to allocate damages among multiple claims.

Flynn's remaining arguments do not alter the result. His claim that the absence of his testimony does not justify summary judgment rests on interrogatory responses disclaiming knowledge of his claim history. [Dkt. 21 at 15-16]. Those responses are not evidence of causation or allocation, and Flynn's refusal to sit for deposition prevented AmGUARD from testing them. Likewise, AmGUARD offered counsel's sworn statements from the AEGIS action as party-opponent admissions, not conclusive proof. [Dkt. 15 at 15]. Flynn does not challenge their admissibility and offers no testimony or evidence to explain them. They therefore remain unrebutted.

## IV. REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO AMGUARD'S MOTION FOR SANCTIONS

AmGUARD's sanctions request is directed at counsel, Eric B. Dick and Dick Law Firm, PLLC, and at counsel's conduct. [Dkt. 15 at 20]. The Response confirms why. Rather than answer the record, counsel has now added new misrepresentations and contradictions, and the Court's inherent power and 28 U.S.C. § 1927 reach exactly that conduct.

Plaintiff urges the Court to limit its analysis to the specific record and conduct before this Court. [Dkt. 21 at 22]. On that record, counsel: (1) commissioned an estimate attributing this interior to Beryl in the same weeks counsel represented to Judge Hanks that the same interior remained damaged by the 2021 freeze [Dkt. 15 at 21]; (2) filed an over-length Response the Court struck, then circumvented the same 25-page limit a second time by relocating the struck argument into appendices so disordered the index misnames them [Dkt. 19; Dkt. 21 at 2]; (3) has now misstated the Court's discovery deadline and the parties' correspondence to excuse Plaintiff's non-appearance [Dkt. 21 at 17; Dkt. 11], and (4) failed to appear at this Court's Hearing on Plaintiff's Motion to Withdraw on September 4, 2026 necessitating a Show Cause hearing. [Dkt. 22; *see also* Dkt. 17]. Each act is DLF's, not Flynn's, and each multiplied these proceedings and burdened

AmGUARD with additional expense. Sanctions under § 1927 and the Court's inherent power run against the attorney responsible, and the conduct here is Eric Dick and DLF's alone. [Dkt. 15 at 20]. Sanctions against Eric Dick and DLF are warranted.

**A. Sanctions are Warranted Against Plaintiff's Counsel.**

Flynn's argument that Rule 37 forecloses other sanctions misreads *Chambers*. While courts generally rely on the rules when adequate, they may invoke their inherent authority when the rules are insufficient. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). The deposition nonappearance is only part of the misconduct at issue. AmGUARD's sanctions request is principally based on counsel's prosecution of a suit that could not satisfy the allocation burden, conduct beyond Rule 37's reach. [Dkt. 15 at 23].

That conduct satisfies both § 1927 and the Court's inherent power. Section 1927 reaches attorneys who unreasonably and vexatiously multiply proceedings through bad faith, improper motive, or reckless disregard of duties to the court. *Edwards v. Gen. Motors Corp.*, 153 F.3d 242 (5th Cir. 1998); *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519 (5th Cir. 2002). The Fifth Circuit has affirmed sanctions for continuing litigation known to be meritless. *Edwards v. Gen. Motors Corp.*, 153 F.3d 242 (5th Cir. 1998). Here, DLF took inconsistent positions regarding the same property, then filed and maintained this suit despite contrary evidence, relying on claimed ignorance and a deposition no-show. [Dkt. 15 at 21-22].

Flynn's responses do not defeat that showing. The Quantum estimate does not address the interior-damage overlap at the heart of the inconsistency. [Dkt. 21 at 22]. Nor does the newly produced 2022 intake note, which is unverified, absent from Flynn's sworn discovery responses, and, if credited, raises additional concerns regarding double recovery. [Dkt. 21-5 at 803; Dkt. 15 at 12; Dkt. 21 at 22]. On this record, AmGUARD has met the clear-and-convincing standard for inherent-power sanctions. *Crowe v. Smith*, 151 F.3d 217 (5th Cir. 1998).

**B. Rule 37(d) Mandates Expenses for the Deposition Non-appearance, Which was not Substantially Justified.**

***Counsel misrepresents the Court's own deadline to manufacture a deposition defense.*** The Response tells the Court that AmGUARD unilaterally noticed the deposition for June 30, 2026 …four days after the June 26 discovery deadline. [Dkt. 21 at 17]. Both halves of that sentence are false. The Court set the discovery deadline at June 30, 2026 not June 26, 2026. [Dkt. 11 at 1]. The June 30 deposition therefore fell on the last day of discovery, not after it.

***The scheduling correspondence shows the setting was requested and confirmed by Plaintiff's counsel and was not "unilateral. "*** Plaintiff's Response omits that DLF requested June deposition dates, agreed to June 30, 2026, and confirmed the setting in writing weeks in advance. Ex. 28 at 1-4. Counsel's withdrawal motion likewise acknowledges the agreed setting. [Dkt. 16 at 2]. Having solicited and confirmed the date, DLF now claims surprise based on a deadline that does not exist. The Response misstates both the scheduling order and the parties' correspondence in an effort to excuse Flynn's nonappearance, thereby unreasonably multiplying these proceedings.

***Exhibit M does not justify the non-appearance.*** Plaintiff's Exhibit M states it is "not [an] explanation for June 30. [Dkt. 21-5 at 735]. However, to the extent DLF attempts to argue justification, and notwithstanding AmGUARD's evidentiary objections, Exhibit M does not excuse the non-appearance. The neurologist's note is dated July 8, 2026, eight days after the June 30 deposition, and therefore could not have justified the failure to appear. [Dkt. 21-5 at 736]. Nor does it state Flynn was unable to testify; it references mobility and memory issues and requests unspecified accommodations.

Neither Flynn nor counsel sought an accommodation, protective order, or continuance before the deposition. Accordingly, Exhibit M is not evidence of substantial justification. It is also unauthenticated hearsay and contains opinions from undisclosed witnesses. Fed. R. Civ. P.

56(c)(2). AmGUARD therefore requests its expenses resulting from DLF's conduct before, during, and after the deposition, which created and compounded the nonappearance.

**C. The Scope of Any Fee Award and the Itemization.**

Flynn invokes Goodyear's but-for causation requirement, but AmGUARD's request is fully consistent with it. As Goodyear explains, when "the entire course of conduct throughout the lawsuit evidence[s] bad faith and an attempt to perpetrate a fraud on the court, " a court may shift all fees incurred; otherwise, recovery is limited to fees that would not have been incurred but for the misconduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 103-04, 108 (2017). AmGUARD's primary position is that counsel's bad-faith conduct permeated this litigation. Alternatively, it seeks fees incurred because of that conduct, including Rule 37(d) expenses stemming from Plaintiff's deposition nonappearance. [Dkt. 15 at 24-25].

Any dispute regarding the fee itemization goes to amount, not entitlement. The Court may award the fees supported by the record and make the causation findings required by the Fifth Circuit. *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519 (5th Cir. 2002).

**D. Referral Does not Require the Court to Adjudicate Discipline.**

Flynn argues that attorney discipline requires procedures this Motion does not provide. [Dkt. 21 at 25]. But AmGUARD does not seek discipline. It seeks a referral to the State Bar of Texas and this District's disciplinary process, where those procedures apply. A referral triggers, rather than bypasses, due process.

Nor do other courts' decisions not to sanction bind this Court. The issue here is the record before this Court, including counsel's inconsistent sworn positions concerning the same property and counsel's conduct in this litigation. That record independently warrants referral.

## V. CONCLUSION AND PRAYER

Three claims, five years, one house, and overlapping damage. Flynn's Response does not supply the covered, in-period, segregated loss that Texas law requires Flynn to prove. Plaintiff and/or DLF re-labels AmGUARD's repair estimates, offers an index that concedes the overlap, and withdraws a claim. AmGUARD Insurance Company therefore respectfully requests that the Court grant this motion; enter judgment that Flynn take nothing on all claims; award AmGUARD its reasonable attorney's fees and expenses of $50,377.80, plus supplemented accruals, against Eric B. Dick and Dick Law Firm, PLLC under the Court's inherent authority, or alternatively $45,664.50 under the inherent authority and 28 U.S.C. § 1927, and at minimum $4,707.00 plus reporter and videographer charges under Rule 37(d); refer Eric B. Dick and Dick Law Firm, PLLC to the State Bar of Texas and to this District's attorney admission and discipline process; order completion of legal ethics training; award AmGUARD its costs of court; and grant all other relief, at law or in equity, to which AmGUARD is justly entitled.

Respectfully submitted,

By:*/s/ **Jamie P. Cooper***

**Christopher W. Martin**
TX Bar No. 13057620
SDTX Bar No. 13057620
E-mail: martin@mdjwlaw.com
808 Travis, Suite 1100
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101
**ATTORNEYS FOR DEFENDANT,**
**AMGUARD INSURANCE COMPANY**

**Of Counsel:**
Jamie P. Cooper
TX Bar No. 24027603
SDTX Bar No. 34510
E-Mail: Cooper@mdjwlaw.com
11467 Huebner Road, Suite 200
San Antonio, Texas 78230
Telephone: (210) 298-2480

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure, by CM/ECF filing on this the September 4, 2026:

Eric B. Dick
DICK LAW FIRM, PLLC
3701 Brookwoods Drive
Houston, Texas 77092
ATTORNEYS FOR PLAINTIFF

***Via E-service:*** eric@dicklawfirm.com

***/s/ Jamie P. Cooper***
Jamie P. Cooper